[No. 12188.    Department Two.    April 5, 1915.]

## SPOKANE MERCHANTS ASSOCIATION, *Respondent*, v. CLERE CLOTHING COMPANY, *Appellant*.[1]

CORPORATIONS—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE —EVIDENCE—SUFFICIENCY. Where a foreign mercantile corporation, being a creditor, purchased a bankrupt stock of goods from the trustee in bankruptcy and conducted the business of selling it off at retail through its sales agents, adding other goods to the stock from time to time, it was a foreign corporation doing business in this state; and it cannot be claimed that the goods were merely delivered to the retail agents for sale on consignment, where their only authority was to sell at retail and deposit the proceeds and the corporation financed the business, retained absolute control of the goods, and made no bill of sale or instrument to secure the alleged purchase price.

SAME—FOREIGN CORPORATIONS—PROCESS—SERVICE — PRESIDENT AS AGENT. Service of a summons on the president of a foreign corporation doing business in this state, while he was temporarily in the state looking after its interests, is authorized by Rem. & Bal. Code, § 226, subd. 9, providing that, in case of foreign corporations, service of summons may be made by delivery to "any agent, cashier or secretary thereof"; since the president was "an agent" of the corporation.

[1]Reported in 147 Pac. 414.

PRINCIPAL AND AGENT — SCOPE OF APPARENT AUTHORITY — STORE MANAGER. A sale of goods to the manager of a retail store for the purpose of replenishing its stock, is within the apparent scope of his authority; and where the retail store was but the *alter ego* of the defendant and its agent to dispose of the stock, the seller was justified in charging the account to defendant upon the manager's request.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered March 10, 1914, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Belden & Losey* (*Henry R. Newton*, of counsel), for appellant.

*J. D. Campbell* and *J. B. Campbell*, for respondent.

ELLIS, J.—This is an action by the assignee to recover the balance due on an account for goods alleged to have been sold by the Spokane Dry Goods Company to the defendant.

The defendant is a New York corporation, engaged in the wholesale clothing business, with its principal, and as it claims, only, place of business at Syracuse, New York. T. H. Clere was its president and Thomas K. Smith its secretary. In its answer it denied that it purchased the goods or that it made payments on the account.

The defendant, appearing specially, moved to quash the service of summons on the grounds that the defendant is a foreign corporation, that it has never had an officer or agent residing in the state upon whom process might be served, and that on July 7, 1913, when this suit was brought, it was not doing business in this state. T. H. Clere, on whom the summons was served, was at that time only temporarily within the state with no intention of making this state his permanent residence. The motion was denied.

The salient facts are as follows: In April, 1912, the Prager-Schlessinger Company, a Washington corporation doing a retail clothing business in the city of Spokane, was

subjected to involuntary bankruptcy proceedings in the United States district court for the eastern district of Washington. The defendant herein, a creditor of the Prager-Schlessinger Company, effected a composition with the other creditors, advancing for that purpose approximately $26,000, which it borrowed on its note from the National Bank of Commerce, at Spokane. The trustee in bankruptcy, by order of court, made to the defendant herein a bill of sale of the merchandise, furniture and fixtures belonging to the Prager-Schlessinger Company. The secretary of the defendant company visited Spokane at that time and negotiated the loan and arranged the matter on behalf of the defendant.

The defendant received the goods and in May, 1912, put them on sale at retail through its sales agents, H. L. Gilmore & Company. That company was authorized by the defendant to sell the goods and pay the proceeds into the National Bank of Commerce to be applied on the loan made to the defendant. There was no evidence that the Gilmore Company had any other business. The evidence makes it clear that this retail sale was operated by the defendant through its agents. The defendant at all times financed and retained absolute control of the business. The agents sold part of these goods, paying the proceeds to the bank until the latter part of July, 1912. During this time the defendant shipped about $21,000 worth of goods to these agents, who, also, from time to time, replenished stock by small outside purchases. About August 1, 1912, by order of the defendant, the remaining goods were delivered to the Prager-Schlessinger Company. This delivery was likewise with the understanding that the Prager-Schlessinger Company was to act simply as selling agent, and was to turn over the proceeds realized from sales to the National Bank of Commerce to be credited on the defendant's indebtedness with the bank. The stock was at all times insured in the name of the defendant and the premiums were paid by the defendant. A retail

business was conducted through this new agent with this stock of goods until January 25, 1913, when defendant claims to have sold the goods to the Prager-Schlessinger Company, merely taking that company's note for something over $30,000, the alleged sale price. It is not claimed that any written contract or bill of sale was made.

After August 1, 1912, and until June, 1913, the defendant at different times delivered shipments of goods to the Prager-Schlessinger Company to the value of over $6,000. These were placed in stock, sold as other goods, and the proceeds applied in the same way. About July, 1912, the Prager-Schlessinger Company was reorganized. Louis Schlessinger was made president and manager and Henry R. Newton, one of defendant's local attorneys, was made secretary. T. H. Clere, president of the defendant company, held 498 shares of capital stock of the Prager-Schlessinger Company, and Louis Schlessinger and Henry R. Newton each held one share. This was a trust arrangement for the purpose of controlling the management of the company while the defendant's goods were in its possession. At the time of the alleged sale, no apparent change was made in the manner of conducting the business. The defendant's president and its attorney still retained all but one share of the capital stock. Smith and Clere testified that the Clere Clothing Company never authorized Louis Schlessinger to purchase goods from the plaintiff's assignor. The evidence, however, shows that Smith and Newton both knew that he did purchase goods from others than defendant and, though Smith objected, no active steps were taken to stop the practice. Defendant's witnesses also testified that Schlessinger was never authorized to issue checks in defendant's name against defendant's account with the bank. Nevertheless, during the period between August 1, 1912, and January 25, 1913, Louis Schlessinger issued many checks on the National Bank of Commerce against the account, some in the name of the Clere Clothing Company. So far as the record shows, his

authority to do so was not questioned. It is claimed that defendant did not know of this. Between August 31, 1912, and June 3, 1913, Schlessinger purchased, from time to time, goods from the Spokane Dry Goods Company to the value of $2,003.83, apparently to replenish stock, and had them charged to the defendant. The sum of $1,498.36 was paid on this account by checks, one in the name of defendant, the others in the name of Prager-Schlessinger Company, all signed by Louis Schlessinger and all charged against the defendant's bank account. Schlessinger, at first endeavored to have these goods charged to the Prager-Schlessinger Company, but in view of the former bankruptcy of that company, the Spokane Dry Goods Company refused to sell to it. On Schlessinger's assurance that he represented the Clere Clothing Company and that the two companies were one and the same, the Dry Goods Company finally sold the goods on the credit of the Clere Clothing Company, after inquiring at the National Bank of Commerce and learning that Schlessinger was running a checking account in the name of the Clere Clothing Company. All this, it is claimed by defendant's witnesses, was without the knowledge of defendant or its officers. On August 8, 1913, the Prager-Schlessinger Company went into voluntary bankruptcy.

The trial was had to the court, defendant preserving its special appearance. The court found that the Spokane Dry Goods Company, between August 3, 1912, and June 3, 1913, sold and delivered to defendant, goods, wares and merchandise of the agreed value of $2,003.83; and that defendant had paid thereon $1,498.36, leaving a balance of $605.47, with interest from August 3, 1912, in favor of the plaintiff as assignee of the Dry Goods Company. Judgment was entered accordingly. Defendant's motion for a new trial was overruled. From the order denying its motion to quash the summons, the final judgment and the order overruling its motion for a new trial, the defendant appeals.

The appellant's contentions may be epitomized as follows: (1) that the court erred in refusing to quash the service of summons; (2) that the court erred in holding that the plaintiff's assignor was justified in charging the goods to the appellant. These questions are soluble on the same facts. They are so closely related that the solution of the one will determine the other.

I.  It is conceded that, if the appellant was doing business in the state of Washington, then the service by delivery of summons to its president, though at a time when he was only temporarily within the state, was valid service on the appellant. The appellant claims that it never did business in this state, other than the isolated transaction of effecting the composition with the other creditors in the first bankruptcy proceedings. This claim is untenable. That transaction was a purchase by the appellant of the bankrupt stock. This is conceded. But it is urged that the deliveries of the goods to Gilmore & Company and subsequently to the Prager-Schlessinger Company, were consignments. In the broad, loose sense of the term, they were, but not in the sense that even a qualified title passed to the consignee. The evidence makes it too plain for argument that the delivery to Gilmore & Company and the original delivery to the Prager-Schlessinger Company were not consignments in the ordinary commercial sense of a transmission to an independent merchant or factor for sale on commission. They were mere deliveries to the appellant's agents to sell at retail and deposit the proceeds to the appellant's credit. The appellant financed the business in both instances and retained absolute control of the goods. The possession of the goods was at all times that of the appellant by its sales agent.

The fact that the Prager-Schlessinger Company was a corporation does not alter the case. The reorganization of that company, at the time of the original delivery to it of the goods, was for the confessed purpose of giving the appellant an absolute control and oversight of its agent. This

emphasizes the correctness of our conclusion. Clere at all times acted for and in behalf of the appellant. When he and the appellant's attorney took over, solely in consideration of the agency, practically the entire capital stock of the Prager-Schlessinger Company, that company, by every just and reasonable intendment, became a subsidiary corporation of the appellant. This status being once established, as it clearly was, if evidence short of an admission can establish anything, it was incumbent upon the appellant to show that the Prager-Schlessinger Company was rehabilitated as an independent entity with complete control of its own functions and destiny at the time of the alleged sale of the goods to it on January 25, 1913. This the evidence wholly fails to establish. All of the capital stock of the corporation save one share was still in effect owned, and in reality controlled, by the appellant through its president and attorney, who still constituted two of the three trustees. The attorney was still retained as secretary. The appellant's bank account was still used *ad libitum* by the Prager-Schlessinger Company. True, the appellant's officers claim this was unauthorized and unknown to them, but it taxes credulity to assume that it knew nothing of the state of its own bank account for months, especially since it had, at the situs of the whole transaction, its own attorney, who was also trustee and secretary of the Prager-Schlessinger Company, confessedly so constituted for the appellant's protection. The very fact that no formal bill of sale was made and no chattel mortgage taken to secure the payment of the alleged purchase price of the goods further lends strong color to the view that the Prager-Schlessinger Company was still what it had been from the date of its reorganization, a subsidiary company of the appellant. Many other circumstances in evidence point to the same conclusion. We are by no means satisfied that the trial judge erred in holding, as he evidently did hold, that the Prager-Schlessinger Company was a mere agent or

instrumentality through which the appellant was transacting its own business in the city of Spokane up to the commencement of this action. It may not be improper to remark that, in the second bankruptcy proceedings, the Federal court, Judge Rudkin presiding, so held and refused to allow the note for the alleged purchase price of these goods as a claim against the bankrupt estate in favor of the Clere Clothing Company. For decisions sustaining this conclusion on closely analogous facts, see *In re Muncie Pulp Co.*, 139 Fed. 546; *Glidden & Joy Varnish Co. v. Interstate Nat. Bank*, 69 Fed. 912. Courts no longer hesitate to look through forms to substance, and ignore a mere colorable corporate entity to the end that rights of third parties shall be protected. *In re Rieger, Kapner & Altmark*, 157 Fed. 609; *Montgomery Web Co. v. Dienelt*, 133 Pa. St. 585, 19 Atl. 428, 19 Am. St. 663; *First Nat. Bank of Chicago v. Trebein Co.*, 59 Ohio St. 316, 52 N. E. 834; *Donovan v. Purtell*, 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (N. S.) 176.

The appellant was a foreign corporation doing business in this state. In such a case, service of summons may be made by delivery to "any agent, cashier or secretary thereof." Rem. & Bal. Code, § 226, subd. 9 (P. C. 81 § 143-5). The appellant's president was in this state upon its business when the service was made. He was its agent. The service was properly sustained. *Commercial Mut. Accident Co. v. Davis*, 213 U. S. 245; *Premo Specialty Mfg. Co. v. Jersey-Creme Co.*, 200 Fed. 352; *Cone v. Tuscaloosa Mfg. Co.*, 76 Fed. 891. The case of *Carstens & Earles v. Leidigh & Haven Lumber Co.*, 18 Wash. 450, 51 Pac. 1051, is distinguished on its facts. In that case the trial court found that the foreign corporation had never done any business in this state, and no exception was taken to the finding.

II. Under the circumstances of this case, the Spokane Dry Goods Company was justified, on Schlessinger's direction, in charging the goods to the account of the appellant.

True, it dealt with a person who assumed to act as agent and was put upon inquiry as to the agent's authority. There can be no question of the agency at the time the account was opened. As we have seen, the evidence was sufficient to justify the view that the Prager-Schlessinger Company was but an *alter ego* of the appellant and so continued to the commencement of this suit. Schlessinger was manager of this *alter ego*. The Dry Goods Company was put upon inquiry, but it was required to inquire no further than to learn the truth. The purchase of the goods to replenish a retail stock can hardly be said to be beyond the apparent scope of the manager's authority. It is the general rule that a third person is warranted in dealing with an agent touching the subject-matter of the agency in all things within the apparent scope of his authority. *O'Daniel v. Streeby*, 77 Wash. 414, 137 Pac. 1025; *Driver v. Galland*, 59 Wash. 201, 109 Pac. 593.

We find no warrant, either in evidence or law, for disturbing the judgment. It is affirmed.

MOUNT, CROW, FULLERTON, and MAIN, JJ., concur.