[No. 27334. Department Two. March 24, 1939.]

SAMUEL R. DUMMER, *Respondent*, v. WHEELER OSGOOD SALES CORPORATION, *Appellant.*[1]

[1]Reported in 88 P. (2d) 453.

*Henderson, Carnahan & Thompson* (*Neal & Bonneville,* of counsel), for appellant.

*Harvey W. McCormack, McMicken, Rupp & Schweppe,* and *J. Gordon Gose,* for respondent.

SIMPSON, J.—This action was begun to collect from defendants certain sums of money alleged to be due on a contract for patent royalties.

The complaint alleged that October 15, 1930, plaintiff and Wheeler Osgood Company entered into a contract, by the terms of which plaintiff gave to the company the exclusive license to use an invention owned by him, and that the company agreed to pay plaintiff a minimum royalty of three thousand dollars per year subsequent to October 15, 1934, and in the event the rights of the company thereunder should pass from it, either by its voluntary act or otherwise, then there should become due to plaintiff by the parties succeeding to such rights, a royalty of ten thousand dollars per year.

It was further alleged that September 15, 1933, the Wheeler Osgood Company assigned and transferred all of its rights under the contract to defendant Wheeler Osgood Sales Corporation, which company then became liable to the plaintiff for the royalties provided in the contract of ten thousand dollars per year from

and after October 15, 1934, together with interest thereon.

Wheeler Osgood Company was dismissed from the case.

The answer admitted that the contract regarding the patent had been entered into by plaintiff and Wheeler Osgood Company, as alleged in the complaint, but denied any liability under the contract.

Trial was had to the court, sitting without a jury. At the close of the trial, the case was taken under advisement, and the court rendered a memorandum opinion in which it held that the license contract had been assigned or transferred to defendant Wheeler Osgood Sales Corporation; that the assignment carried with it an assumption by the defendant of the liabilities contained in the contract; and that plaintiff was entitled to a judgment as prayed for in the complaint.

Defendant filed a petition for rehearing, in which it urged that the court reconsider its decision for several reasons, among which were that the court had decided the case upon a ground not urged by the plaintiff, and judgment should not be entered for more than three thousand dollars per year minimum royalty. After a hearing upon the petition, the court decided that plaintiff would be entitled to recover the minimum royalty of three thousand dollars per year. Findings of fact and conclusions of law were made by the court, and judgment entered against Wheeler Osgood Sales Corporation in the sum of $10,500, together with interest thereon computed on quarterly payments of $750 when each became due and owing. From the judgment so entered, defendant Wheeler Osgood Sales Corporation has appealed.

Errors urged are as follows: In overruling the demurrer to the amended complaint; in entering judgment in the sum of $10,500 and interest, or in any sum;

in entering judgment for $1,500 for royalties from October 15, 1937, to April 15, 1938; in computing interest upon a quarterly basis; and in allowing any interest previous to the institution of the action.

The facts, as disclosed by the evidence, may be summarized as follows: The Wheeler Osgood Company has been a manufacturing concern doing business in Tacoma for several years prior to October 15, 1930. March 1, 1926, it made a deed of trust to the Bank of California of certain of its properties described as:

". . . and all other property, real, personal and mixed, which the company now owns or which it may hereafter acquire wherever situated, except—

"(1) Cash (other than cash required to be deposited hereunder with the Trustee), including bank deposits, notes and accounts receivable, bills of exchange and trade acceptances, stocks, bonds and other securities and choses in action, whether now owned or hereafter acquired;

"(2) And except also merchandise, raw materials, products manufactured by the company for sale in the usual course of business and products in the course of such manufacture, and also such articles of personal property as shall from time to time be kept by the company for the purpose of wrapping, packing or otherwise preparing its manufactured products for market."

October 15, 1930, respondent and Wheeler Osgood Company entered into a written contract concerning the invention owned by the respondent, which provided for the payment of royalties during the first four years based upon the number of patented devices manufactured. The company, as assignee, further agreed to pay a minimum royalty of three thousand dollars annually subsequent to October 15, 1934.

The portion of the contract relating to the minimum royalty provided:

"(4) The party of the second part further agrees that after the lapse of the first four year period of this agreement, it shall pay to the party of the first party as a minimum royalty for the continuation of this exclusive license, royalties to the sum of Three Thousand Dollars ($3,000) annually and computed per calendar year, and upon the failure on its part of paying said minimum royalty, the party of the first part shall have the right at his election of cancelling said exclusive rights conveyed to the party of the second part, in which event the said party of the second part shall continue to enjoy the non-exclusive license rights upon the terms and conditions as aforesaid.

"And it is expressly understood and agreed by and between the parties hereto that in case the rights of the party of the second part hereunder shall pass from the party of the second part either by its voluntary act or otherwise there shall in such case be and become due and payable to the party of the first part from any party or parties who shall have succeeded to such rights, after the expiration of the first four year period of this agreement and after the rights hereunder of the party of the second part shall have passed, as a minimum royalty for the continuance of the license and rights granted hereunder by the party of the first party, royalties to the sum of Ten Thousand Dollars ($10,000) annually and computed per calendar year and that in the event that, in such case, default shall be made in making any such payment to the party of the first part he shall have the right to cancel this agreement and terminate all the rights and licenses granted hereunder.

"It being understood, however, that after such rights shall have passed as aforesaid from the party of the second part, then and from thenceforth the party of the second part shall not in any degree or manner be liable to the party of the first part for or on account of the above provision for minimum royalties of Ten Thousand Dollars ($10,000) annually as aforesaid.

"(8) The party of the second part further agrees to make a full and correct accounting to the party of

the first part, under oath, if required, and to make all payments due the party of the first part at least once every ninety days and covering the preceding three months period; . . ."

In September, 1933, the Wheeler Osgood Company found itself in a precarious financial condition. It was indebted to the Bank of California in a very large sum, and had a defaulted bond issue of over eight hundred thousand dollars covering its fixed assets. The Wheeler Osgood Sales Corporation, appellant here, was organized at the direction of the creditors of the old company. Appellant then took over the assets of the Wheeler Osgood Company which were not covered by the mortgage to the Bank of California, secured a lease on the property of the Wheeler Osgood Company which was covered by the mortgage, and proceeded to carry on the business formerly conducted by the old company.

The reason for the formation of the new corporation is shown by the following stipulation entered into between counsel during the trial:

"The Wheeler-Osgood Sales Corporation was organized at the direction of the creditors . . . the Wheeler-Osgood Sales Corporation taking over the assets of the Wheeler-Osgood Company, which was not covered by the mortgage, and the Wheeler-Osgood Sales Corporation thereupon took a lease on the property of the Wheeler-Osgood Company which was under the mortgage, . . . It is a subsidiary of the Wheeler-Osgood Company. . . .

"The stock of the Wheeler-Osgood Sales Corporation is held by the bank and the bond holders jointly as security for the indebtedness of Wheeler-Osgood Company. . . .

"The purpose of Wheeler-Osgood Sales Corporation was to organize a corporation which would have no liability, and therefore be able to secure credit, so that the plant could be operated."

The pertinent portion of the bill of sale from the old company to appellant corporation reads:

"KNOW ALL MEN BY THESE PRESENTS That THE WHEELER, OSGOOD COMPANY, a corporation, duly organized and existing under and by virtue of the laws of the State of Washington, hereinafter called the 'Seller', for and in consideration of the sum of ONE ($1.00) DOLLAR, and other good and lawful considerations to it in hand paid at or before the ensealing and delivering of these presents to WHEELER OSGOOD SALES CORPORATION, a corporation organized and existing under and by virtue of the laws of the State of Washington, hereinafter called the 'Buyer', the receipt whereof is hereby acknowledged, has bargained and sold, and by these presents does grant and convey unto the said buyer, its successors and assigns, all of the property, goods, wares, merchandise, stock, choses in action, securities and chattels, described, listed and referred to in the list and inventory on file and of record in the offices of the Company, identified by the signature of the officers of the parties hereto, and by reference made a part hereof, the same as if fully set forth in this paragraph, it being the intention to hereby grant, bargain, sell and convey all of the property and assets of the Seller, save and excepting such real and personal property and other assets as are covered by a certain Deed of Trust dated March 1, 1926, made, executed and delivered by the Buyer to The Bank of California, N. A. of Tacoma, Washington."

It is necessary to note that the lease from the old to appellant corporation reserved no specific amount of rent, but stated that appellant, as lessee, should pay as rent all of its net operating revenues, and then provided:

"The said rental shall be paid monthly to the said The Bank of California, N. A. at its principal place of business in Tacoma for the use and benefit of the Lessor and the said The Bank of California, N. A. and the said Bondholders' Committee, . . ."

As further indicating the purposes of the lease and the entire transaction, the agreement contained the following provisions:

"It is understood and agreed that this lease is made in conformity with a plan of reorganization of Lessor heretofore referred to and that the Lessor may at any time discharge or satisfy its obligation to the said The Bank of California, N. A. and to the said bondholders represented by the said Bondholders' Committee and thereupon terminate this lease and repossess itself of the property herein demised and let.

"It is understood that the Lessee is a subsidiary of the Lessor and that Lessor or the Lessee may, at the direction of the said The Bank of California, N. A. and the said Bondholders' Committee, terminate this lease at any time upon giving thirty days' notice of its intention so to do."

After appellant secured the bill of sale and lease, it proceeded to carry on the business of the Wheeler Osgood Company, using the same offices and plant as the old company. Wheeler Osgood Company's office files remained in the office, but it did not retain any salaried staff of officers.

Appellant discusses the first two assignments of error together, and contends the case was tried upon the theory that it was responsible under paragraph IV of the contract, which provided that, in the event the Wheeler Osgood Company should assign the contract, the assignee would be obligated to pay as a minimum royalty the sum of ten thousand dollars annually, and finally decided upon the theory that appellant company was the *alter ego* of the Wheeler Osgood Company and responsible for the obligations of that company.

It is true that both the complaint and the trial were predicated upon the proposition stated by appellant, and the court in its memorandum opinion decided that

appellant should be so held. However, the evidence concerning the contracts, the reason for the transfer of the property, and the manner of operations was admitted without objection. Moreover, in its petition for rehearing, the appellant suggested to the court that if the appellant was a continuation of the old company the amount of recovery, if any, should be based upon the provisions of the contract calling for $3,000 per year. Under such circumstances, it was proper for the trial court to consider the complaint as amended to conform to the evidence, and to decide the case upon the facts presented.

■ We now consider whether appellant was the *alter ego* of the Wheeler Osgood Company.

In the case of *Seattle Investors Syndicate v. West Dependable Stores of Washington,* 177 Wash. 125, 30 P. (2d) 956, it appeared that the plaintiff had leased property to a corporation known as Red Robin Stores for a period of five years. Thereafter, another corporation known as the West Dependable Stores of Washington was organized to take over the assets of the original lessee. The stock of the new corporation which took possession of the premises and operated the business was issued to the stockholders of the Red Robin Stores. The new corporation paid the rent for some time, and then asserted that it was under no further liability, inasmuch as it had never expressly assumed the terms and conditions of the lease. In holding the new corporation liable, this court said:

"As appears, the appellant purchased the capital stock and assets of the Red Robin Stores, operated the business thereafter, and paid the stockholders of the Red Robin Stores in stock of the new corporation. The Red Robin Stores, while its corporate existence was not destroyed, was nothing more than a shell. Under such circumstances, the appellant became obligated to pay the rent as provided for in the lease. In *Okmulgee*

*Window Glass Co. v. Frink,* 260 Fed. 159, it is said:

" 'Where the new corporation is in its essence but a continuation of the activities and interests of the old company, which retains simply its franchise as a corporation, thus becoming practically extinct as an active entity, direct recovery is allowable. [Citing authorities.]' . . .

"In *Jones v. Francis,* 70 Wash. 676, 127 Pac. 307, it was held that, where an old corporation had been dissolved by the secretary of state for non-payment of its license fees, without notice to its trustees, who, when they learned of the fact, organized a new corporation and conveyed to it all the assets without other consideration than the issue of its capital stock to the old stockholders, thereby absorbing the old company, the new corporation was liable upon all the obligations of the old corporation. There is no substantial distinction between that case and the one now before us. The appellant was liable for the rent provided for in the lease, as modified by the agreement of the parties, in that the rent was to be seventy dollars per month instead of ninety dollars."

In *Platt v. Bradner Co.,* 131 Wash. 573, 230 Pac. 633, Judge Holcomb, speaking for the court, stated:

"It is also well settled law that, while, in general, a corporation is a separate legal entity, nevertheless when one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice require; and where stock ownership is resorted to not for the purpose of participating in the affairs of the corporation in the customary and usual manner, but for the purpose of controlling the subsidiary company so that it may be used as a mere agency or instrumentality of the owning company, the court will not permit itself to be blinded by mere corporate form, but will, in a proper case, disregard corporate entity, and treat the two corporations as one."

In the recent case of *National Bank of Commerce of Seattle v. Dunn,* 194 Wash. 472, 78 P. (2d) 535, this

court collected many cases from this and other jurisdictions concerning the application of the rule of *alter ego,* and while the question under discussion was one concerning the liability under a lease and the formation of a company by the lessees for the purpose of taking over the leased premises, the rule announced is applicable to the case at bar.

This court stated in *Associated Oil Co. v. Seiberling Rubber Co.,* 172 Wash. 204, 19 P. (2d) 940, as follows:

"Undoubtedly, it is the general rule that mere common ownership of the capital stock or interlocking directorates, or like evidences of close association, will not justify the courts in disregarding corporate identities, but where, as here, the identities are so confused and intermingled as to result in probable fraud upon third persons dealing with the corporations or either of them, whether fraud be actually intended or not, then the exception to the rule will apply, and the exception is as well established as the rule itself. *Mitchell v. Lea Lumber Co.,* 43 Wash. 195, 86 Pac. 405, 9 L. R. A. (N. S.) 900; *Spokane Merchants Association v. Clere Clothing Co.,* 84 Wash. 616, 147 Pac. 414; *Platt v. Bradner Co.,* 131 Wash. 573, 230 Pac. 633. In none of the cases cited do the facts more strongly call for the application of the exception to the general rule than do the facts in this case."

See, also, *Pittsburgh Reflector Co. v. Dwyer & Rhodes Co.,* 173 Wash. 552, 23 P. (2d) 1114; *McCurdy v. Spokane Western Power & Traction Co.,* 174 Wash. 470, 24 P. (2d) 1075; *State v. Davies,* 176 Wash. 100, 28 P. (2d) 322; *Pohlman Inv. Co. v. Virginia City Gold Mining Co.,* 184 Wash. 273, 51 P. (2d) 363; *Garvin v. Matthews,* 193 Wash. 152, 74 P. (2d) 990.

The new corporation, appellant, is in fact the same as the old company in everything but the name. Its real owners, the stockholders of Wheeler Osgood Company, are the same, and it is officered by at least some of the men who had guided the business affairs of the old

company. It used the same manufacturing plant, offices, and other places of business of its predecessor. Appellant carried on the business of the old company for the benefit of the stockholders of the Wheeler Osgood Company. The new corporation was in truth the business conduit through which the old company continued to operate.

Under such circumstances, it is unnecessary that actual fraud be shown. It is sufficient if the existence of distinct corporate entity with separate responsibility would bring about a result amounting to a denial of justice and the consummation of a wrong.

It is urged by the appellant that the Wheeler Osgood Company did not transfer all of its assets, and that the rule of *alter ego* does not apply in cases where the original corporation does not sell all of its assets to the new company. While it is true in this case that Wheeler Osgood Company retained title to the property covered by the mortgage to the bank, the effect of the bill of sale and lease was to divest itself of substantially all of its property. The unmortgaged assets were transferred to appellant, and, by the execution of the lease, the old company, in effect, rendered its equity in the retained property and the value of the capital stock in the new company entirely valueless, at least until such time as the debts to the Bank of California were liquidated, because no profit was available for the use of either corporation.

After a consideration of the whole case, we feel obligated to hold that appellant was but the *alter ego* of the Wheeler Osgood Company.

In urging that appellant is not the *alter ego* of the Wheeler Osgood Company, counsel cite the case of *First Nat. Bank v. Walton*, 146 Wash. 367, 262 Pac. 984, which holds that, though the stock of one corporation is owned by another and formed as a subsidiary

to the holder of the stock, the new corporation is not the *alter ego* of the old company.

The rule announced is a proper one as applied to the facts presented. In that case, the plaintiffs made the loan in controversy to the subsidiary company with full knowledge of the relation of the two corporations, and as a part of the agreement entered into with plaintiff banks.

Appellant contends that another Washington decision, *Sommer v. Yakima Motor Coach Co.,* 174 Wash. 638, 26 P. (2d) 92, is applicable to the facts presented in the case at bar. In that case, it appeared that two stage companies had the same officers and were closely allied in their business relations. One was financially irresponsible and kept alive by loans from the other. Stating our conclusions in regard to the facts presented we said:

"So, here, we are convinced that the facts with which we are now immediately concerned, and about which there is no dispute, do not establish a dominion so complete or an interference so obtrusive as to compel liability under the rule of agency; and further, that, whatever control the Washington company may have had over the Yakima company by virtue of its stock ownership, it was not such as to constitute the latter a mere 'instrumentality,' 'conduit' or 'alter ego' of the other; and finally, that neither public policy nor the right of any party here concerned requires the sacrifice of the judicial conception of distinct corporate existence."

A comparison of the facts in this and the case cited reveals a situation entirely different. In that case, the two companies were distinct corporate entities engaging in the same type of business.

Finally, appellant contends that the court erred in allowing recovery of $1,500, being an amount claimed to be due on October 15, 1937, to April 15, 1938, and in computing interest upon a quarterly basis.

Section 4 of the contract entered into between Wheeler Osgood Company and respondent states the amount to be paid annually. Section 8 relates to and definitely fixes the dates of payment as being every ninety days. It is clear from the reading of these two sections that the parties to the contract fixed the annual charge for the patent license at three thousand dollars, payable at the rate of $750 every ninety days.

Counsel for appellant in their well-considered briefs have discussed at length questions relative to whether Wheeler Osgood Company did transfer to appellant its rights under the contract in question and whether appellant assumed the liabilities imposed by the contract.

Our determination that appellant is the *alter ego* of the Wheeler Osgood Company renders a consideration of these questions unnecessary.

The trial court properly construed the contracts in question and correctly applied the law relative thereto.

The judgment is affirmed.

BLAKE, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.