[No. 32157.    Department One.    November 20, 1952.]

RALPH ZANDER, *Respondent,* v. MELVIN M. LARSEN *et al.,*
*Appellants.*[1]

*Binns, Cunningham & Fletcher,* for appellants.
*Hodge & Mann,* for respondent.

[1]Reported in 250 P. (2d) 531.

GRADY, J.—This action was instituted by Ralph Zander to recover judgment upon a promissory note executed by a partnership composed of the individual appellants and J. R. Thomas, and alleged to have been assumed by the corporate appellant. The court made findings of fact and entered a judgment against all of the appellants. J. R. Thomas was not served with process, made no appearance in the action, and at the time of trial it was dismissed as to him.

The assignments of error challenge three of the numbered findings of fact and the legal conclusions the court drew from them, as well as the adoption by the court of the theory of the case advanced by respondent instead of that advanced by appellants.

The following is a statement of events which portray the relationship of the parties interested in this litigation:

In 1945, Larsen and Dahl engaged in the business of bottling carbonated beverages under the name of Northwest Bottling Company. At or subsequent to that time, the Nesbitt Bottling Company, a corporation, was engaged in a similar business. The corporation went into the hands of a receiver. Larsen, Dahl, and Thomas acquired the assets of the corporation from its receiver, together with the right to use its name. The Northwest Bottling Company and Nesbitt Bottling Company were consolidated about October 1, 1948, into a partnership composed of Larsen, Dahl, and Thomas. In April, 1949, Larsen, Dahl, and Thomas incorporated Nesbitt Bottling Company of Tacoma, Washington, Inc.

In the formation of the partnership, Thomas agreed to contribute the sum of $800 in cash and to assume and pay to the Standard Finance Company a debt owing to it by Northwest Bottling Company. Thomas acted as secretary of the partnership, assisted in the office work, and did work in the bottling plant. He was assigned the work of negotiating loans to the partnership. It was admitted by Larsen, when testifying as a witness at the trial, that Thomas was held out to the public as a partner in the business of Nesbitt Bottling Company.

In order to acquire the assets of Nesbitt Bottling Company and to pay a debt of $2,800 owing to a bank, it was necessary that money be borrowed. Thomas negotiated loans from two parties totaling $3,300. He was assisted by Larsen. The lenders were given notes signed by all three partners. Out of one of the loans, Thomas was permitted to use $1,200 for his own purposes.

Thomas entered into negotiations with respondent for loans. On one occasion, Thomas invited respondent to visit the bottling plant. He had acquired some knowledge that the partnership was taking over the assets of the receivership. When respondent visited the plant, he was introduced to Larsen by Thomas, who stated to Larsen, "This is the man that is coming in with us." Respondent remained at the plant about an hour or two. The receiver came to the plant, also a salesman of an extract company. Respondent observed Thomas making payment to the salesman for a barrel of the extract purchased. Respondent went to lunch with Larsen and the receiver. At lunch, Larsen and respondent talked about a mutual friend engaged in the bottling business at Dickinson, North Dakota, and discussed the bottling works and business at that place. Respondent informed Larsen that he had worked in a bottling works at Mandan, North Dakota.

During the negotiations with respondent and on October 21, 1948, Thomas obtained from respondent's wife a check for $2,000 for which he gave her a note and a letter reading as follows:

"5%                    INVESTMENT NOTE                    5%
                              No. 146
"South Tacoma, Washington                    October 21, 1948
    "ONE YEAR AFTER DATE WE PROMISE TO PAY TO THE ORDER OF RALPH or BRIDGET ZANDER the sum of TWO THOUSAND and no/100........$2000.00 with interest from date at the rate of 5% per annum until paid. The makers of this note hereby agree to pay same six months after date if demanded at a rate of 3%, otherwise 5% per year will be provided.
    "If the investor wishes to reduce the amount of $2000.00 yearly, same may be done by the returning of one-quarter of the total amount each year thereafter until the invest-

ment is paid in full. 5% will be paid on all lowest balances due.

"Witness:  J. R. Thomas
Laurine Wade  d/b/a Z. A. VANE & Co."

"NORTHWEST BOTTLING CO.
5806 So. Washington St. Hi. 1721
Tacoma 9, Washington
"October 21, 1948.

"It is understood and agreed that $2000.00 given J. R. Thomas as of this date may be applied on the purchase of holdings in the new Nesbitt Orange Company formed 10/20/48.

J. R. Thomas"

A few days later, Thomas gave Mrs. Zander the following document:

"NESBITT BOTTLING
COMPANY
OF
TACOMA, WASHINGTON  Telephone
5806 South Washington Street  Hillside 1721
Mel Larsen, Johnny Dahl, Joe Thomas, Owners
December 8, 1948.

"To: Ralph Zander

"In analyzing a plan for you to come into active participation with our newly formed company, I submit to you the following:

"Each of us listed above will carry 30% of the investment stock, so to speak, and we will offer you 10% of the yearly profit.

"Besides this, you would have a permanent position as driver or later on perhaps as manager of one of the distributors and we have in mind the Bremerton territory. You would go to work just as soon as we need our 4th truck operating, or whenever you finished your 'on-the-job' training program. That would be up to you.

"I was telling Mr. Vane about how you were interested in this business having been in same for quite a number of years. He suggested your using his investment money to buy into the organization realizing that you would be an asset to the growth of it.

"As you have given me $2000.00, if you want to transfer $4000.00 from Vane to us, then we could give you this agreement. Until you became active in our company we would pay you 6% on the total amount.

"We are making progress everyday. We have just learned from Mr. George Citkovich the owner of the Model Grill downtown that we can buy the '5 to 1' copyright and complete franchise from him for about $1500.00. This we intend to do as soon as possible and then sub-franchise to bottlers at Olympia, Port Angeles, Bellingham, etc., at a royalty fee of $.05 per bottle. This very popular mixer could just as well go nation wide.

"Will you call me tonight at home or drop in at the plant if you are interested.

Sincerely,<br>Joe"

On December 14, 1948, at the request of Thomas, Mrs. Zander delivered to him a savings account passbook issued by Z. A. Vane Co. for $2,500 in such form that he could cash the same. Thomas was a nephew of Vane and either was in his employ or did business under the name of Z. A. Vane Co. Thomas then executed and delivered to respondent a note dated December 14, 1948, for the sum of $2,500, payable one year from date with interest at six per cent per annum. The note was signed "Nesbitt Bottling Company of Tacoma, by J. R. Thomas."

The findings of fact made by the court with reference to which error is assigned are to the effect that (1) in December, 1948, Larsen, Dahl, and Thomas were copartners doing business under the firm name of Nesbitt Bottling Company of Tacoma; (2) on or about December 14, 1948, respondent loaned $2,500 to the partnership, and in consideration thereof a promissory note was executed in its name and delivered to respondent by Joseph A. Thomas while acting within the scope of his authority; and (3) on or about April 28, 1949, Larsen, Dahl, and Thomas incorporated the partnership business under the name of Nesbitt Bottling Company of Tacoma, transferred all of the assets of the partnership to the corporation, and the corporation assumed all of the indebtedness of the partnership, including the liability of the partnership to respondent evidenced by the promissory note.

We gather from the briefs of appellants and the oral argument of their counsel that when the letter and note are

considered together as a part of one transaction, as well as the testimony and conduct of the parties, the conclusion should be reached that the letter amounted to an offer on the part of Thomas to sell to respondent a 10% interest in the partnership business and a promise of employment; that the loan of $2,500 was a personal one to Thomas, he having retained the money for his own uses, and that Thomas, as a partner of Larsen and Dahl, was without authority, express or implied, to sell a part of the partnership business, to promise employment, or to execute the note in the partnership name.

We are in accord with the view that the letter and the note should be considered together in order to aid in determining the real import of the whole transaction. We thing the investment note and the letter of October 21, 1948, should also be considered. We also agree with appellants that Thomas was without authority to sell an interest in the partnership business, but cannot agree that such unauthorized offer now affects the obligation created by the note. The reference on the bottom of the note "subject to 10% agreement forthcoming" either applies to the letter not signed in the partnership name or to some agreement of like import to be executed by the partnership later.

We gather from all of the instruments we have set forth that respondent was led to believe and had the right to believe he had made an investment in the Nesbitt Bottling Company, along with which he would have employment. The record shows that respondent was not experienced in business affairs, and that he reposed full confidence in Thomas to see that he got something of value for the money he delivered. His belief was aided by the invitation to visit the plant and the statement made by Thomas to Larsen, "This is the man that is coming in with us," when such visit was made, coupled with being shown over the plant and being invited to lunch with Larsen and the receiver. He confirmed his belief after he had no further contact with Thomas by calling on Larsen and making inquiry about his supposed interest in the business and his employment. The statement on the note "subject to 10% agreement forth-

coming" indicates that if respondent did not get the interest in the business and the employment, then such note would constitute an obligation to pay him the sum mentioned and interest.

The court did not believe the testimony of either Larsen or Dahl in so far as they sought to prove lack of knowledge that Thomas was negotiating with respondent for a loan. We think the court was justified in feeling that Larsen and Dahl, particularly the former, knew more about the transaction than they were willing to admit.

■ It is our opinion that Thomas had express authority from his partners to borrow money to finance their enterprise. This would carry with it the authority to execute a promissory note to evidence the indebtedness.

■ The fact that Thomas did not pay the money borrowed from respondent into the firm treasury furnishes no defense to the partnership or to Larsen and Dahl, members thereof. When Thomas received the $2,500 from respondent for which he gave the note, such money became partnership property. If Thomas misappropriated the money, the partnership and its members were nevertheless obligated to pay the note when it became due. RCW 25.04.140. This statute provides that a partnership is bound by a partner's breach of trust in the following instances:

"(1) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and

"(2) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership."

In view of this legal situation, it became the duty of the partnership to either ratify and give effect to the proposal made by Thomas to respondent and to carry it out, or to recognize the note as a partnership obligation. The partnership declined to make such ratification, and the note then became a binding obligation.

■ We agree with the trial court that the Nesbitt Bottling Company of Tacoma, Inc., when it received the property and assets of the partnership for no other consideration

than the issuance of stock to two of the partners and later to the successor of one of them, in legal effect assumed the obligations evidenced by the partnership note.

The record shows that the main reason for incorporating the Nesbitt Bottling Company was to avoid personal liability arising in the course of business. The partners composing the partnership and the incorporators and stockholders of the corporation were the same persons. One of them had not contributed his agreed share to the partnership, but he was nevertheless a partner, at least so far as respondent was concerned. The three partners subscribed to all of the capital stock of the corporation. All of the assets the corporation had with which to start business were those turned over to it by the partnership. The corporation was nothing more than a continuance of the partnership. It paid no money for the partnership assets. The corporate stock received did not become a partnership asset. It carried on the same business in Tacoma and, as to respondent, continued to be the same entity under substantially the same name. When Thomas absconded and left the state, Vane, his uncle, assumed and paid his partner-stock subscription liability, and corporate stock was issued to him. The corporation had then become liable on the partnership note by a legal assumption of the indebtedness evidenced thereby.

With the foregoing situation before us, we think we should, as has sometimes been said, "pierce the veil" of the corporation, look beyond the fiction of corporate entity, and hold the corporation to a discharge of the liability resting on the members of the partnership who incorporated the corporation. The principles of law upon which such a conclusion may be based are very fully explained in 13 Am. Jur. 1132-1134, Corporations, §§ 1248 and 1249. They are illustrated and applied in cases where a corporation instead of a partnership was involved. *Carstens & Earles v. Hofius,* 44 Wash. 456, 87 Pac. 631; *Jones v. Francis,* 70 Wash. 676, 127 Pac. 307; *Northwest Perfection Tire Co. v. Perfection Tire Corp.,* 125 Wash. 84, 215 Pac. 360; *Dummer v. Wheeler Osgood Sales Corp.,* 198 Wash. 381, 88 P. (2d) 453. In the

case of *Superior Portland Cement v. Pacific Coast Cement Co.,* 33 Wn. (2d) 169, 205 P. (2d) 597, we recognized the rule that courts will ignore the separation of entities in order to defeat a fraud, wrong, or injustice, at least where the rights of third persons are concerned, and said on page 212 of the opinion:

"It is a well-recognized principle of law that a corporation may not be used as a cloak or disguise to escape corporate liability, and that the corporate veil may be pierced when necessary to do justice in particular cases."

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.