[No. 32633.   Department One.   November 26, 1954.]

WILLIAM P. WOOD, *Respondent*, v. CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, *Defendant*, UNION PACIFIC RAILROAD COMPANY, *Appellant.*[1]

[1]Reported in 277 P. (2d) 345.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Altha P. Curry,* for appellant.

*John H. Kirkwood* and *John W. Schumacher,* for respondent.

FINLEY, J.—This is an action for damages resulting from a collision between plaintiff's automobile (proceeding in a generally northerly direction on primary state highway No. 13) and a freight train of defendant Union Pacific Railroad Company (standing on railway tracks which cross

the highway in a generally easterly and westerly direction).
The railway crossing (scene of the accident) is approximately one hundred seventy feet within the city limits of
Cosmopolis, Washington. The train, en route from Hoquiam
to Centralia, stopped a short time prior to the accident west
of the crossing. The engine was uncoupled and crossed the
highway to a switch about three hundred feet east of the
crossing. It then backed over the crossing on a side or passing track, north and parallel to the main track. Nine gondola cars and one tank car were picked up by the engine
from the passing track. The engine and the ten cars proceeded forward, passed this switch, and backed to the west
to make connections with the train which had been left
standing west of the crossing on the main track. A brakeman was between the cars, effecting a coupling thereof,
when the accident occurred. The highway immediately
south of the crossing is straight and level for a distance of
about fifty or sixty feet. Thereafter, it continues straight,
but is uphill for a distance of around eight hundred feet.

The plaintiff testified that he rounded a curve at the top
of the hill at approximately fifty miles per hour, removed
his foot from the accelerator, and proceeded downhill on
compression, with his foot off the brakes; that he saw the
train when he was about one hundred feet away from it;
that his automobile was then traveling between forty and
forty-five miles per hour. He attempted to put on the brakes
but only succeeded in getting his foot on the brake pedal
before his automobile crashed into the side of a gondola
car loaded with logs. The gondola car was painted black and
had white lettering on it. The plaintiff had a fleeting glimpse
of a red glare underneath the train, apparently from a fusee
placed by a train crewman on the north side of the crossing. Plaintiff was familiar with the crossing, having crossed
it twice daily over a period of four months. Normally, the
state maintained a light about forty-five feet south of the
crossing, but, at the time of the accident, the light was not
burning. Plaintiff testified that he did not realize the light
was out until several hundred feet before he reached the
crossing.

The case was tried before a jury. At the end of the evidence, the trial judge granted the defendant's motion for a directed verdict, stating that plaintiff was contributorily negligent as a matter of law in failing to take proper precautions for his safety in approaching the crossing, in view of his knowledge of its existence, and in violation of the statutory speed limit of twenty-five miles per hour (applicable to the portion of the highway lying within the corporate limits of Cosmopolis where the railway crossing is located). After a motion by plaintiff for a new trial and argument thereon, the trial judge reversed himself, stating that he did so because certain evidence had been improperly excluded relative to the existence of a city-limits sign on the highway north of the crossing, and because there was sufficient evidence to go to the jury on the issue of whether the crossing constituted a trap. A new trial was granted. Defendant, Union Pacific Railroad, appealed. It should be noted that, at the end of the plaintiff's evidence, the defendant, Chicago, Milwaukee, St. Paul & Pacific Railroad, was dismissed without objection.

Appellant's significant assignments of error assert that the trial court erred: (a) in reversing its oral decision and, thereafter, refusing to grant appellant's motion for a directed verdict and for dismissal as of the close of all of the evidence; (b) in not entering an order or judgment of dismissal accordingly. The legal questions raised by such assignments of error are: (1) whether there was substantial evidence from which the jury could have found negligence on the part of the railroad company; (2) whether the evidence of contributory negligence was so persuasive that reasonable minds could not disagree thereon.

Appellant cites numerous cases for the proposition that the presence of a train on a railroad track is normally sufficient warning to motorists to negative negligence, or tort liability, on the part of a railroad company where a motorist collides with the train. *Hendrickson v. Union Pac. R. Co.,* 17 Wn. (2d) 548, 136 P. (2d) 438, 161 A. L. R. 96. Basically, appellant contends that there is no substantial evidence from

which the jury might have concluded that circumstances existed relative to the crossing at the time of the accident which constituted a trap, amounting to an exception to the general rule that the presence of the train was sufficient warning to respondent. If we were members of the jury, we might, by weighing the evidence, reach the conclusion that no trap existed and that respondent was not deceived by the darkness, the black gondola car, the absence of lights or flares, or by the topography of the crossing and the highway approaching it. However, this would be different from saying that there is no substantial evidence in the record from which the jurors could have concluded otherwise.

■ Furthermore, in considering a motion for a directed verdict and dismissal, or for judgment notwithstanding the verdict, the rule is that such motions admit the truth of plaintiff's evidence and all inferences reasonably to be drawn therefrom, and require that the evidence be interpreted most strongly against the defendant and in the light most favorable to the plaintiff. *LaMoreaux v. Fosket, ante* p. 249, 273 P. (2d) 795; *Olson v. White,* 37 Wn. (2d) 62, 221 P. (2d) 542.

In *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265, we said:

"A court will not be justified in taking from the jury the question of contributory negligence unless the acts committed by the party charged therewith are so palpably negligent that there can be no two opinions concerning them."

■ Respondent, although he admitted having used the crossing daily, emphasizes the darkness, the black color of the gondola car, the fact that he was moving downhill on the highway in such a manner that his headlights did not focus upon or illuminate the train until he was too close to stop, and the fact that even the train crew had recognized the danger of the situation by placing a fusee on the north side of the crossing, but had neglected to place one on the side where respondent could have seen it. Viewing the evidence and the reasonable inferences therefrom in the light most favorable to respondent, we are inclined to disagree

with the railroad's contention that any question of negligence on its part should have been taken from the jury by the trial court.

■ Now as to the matter of contributory negligence: Since it is our view that there is substantial evidence in the record from which the jury could have concluded that respondent was deceived or trapped by the circumstances pertaining to the crossing, it seems to us that reasonable minds might well disagree as to whether, under all the circumstances, respondent's conduct, among other things his speed of between forty and forty-five miles per hour at a point one hundred feet from the crossing when he first saw the train, was or was not contributory negligence and a proximate cause of the accident. However, the location of the crossing, one hundred seventy feet within the city limits of Cosmopolis, and the speed limit of twenty-five miles per hour, applicable to travel on the highway for a distance of one hundred seventy feet south of the crossing, requires detailed discussion.

Appellant vigorously contends that respondent was guilty of contributory negligence *per se* because he exceeded the maximum speed limit of twenty-five miles per hour within the limits of an incorporated town, as prescribed by RCW 46.48.020. The respondent admittedly was traveling from forty to fifty miles per hour at the time he entered the official city limits of Cosmopolis, which, as mentioned above, is one hundred seventy feet south of the crossing, according to the official records in evidence. However, it was established that there was no city-limits sign or speed sign south of the railroad crossing. Photographs of the crossing, admitted into evidence without objection, clearly indicate that the city-limits sign and a 25-mile per hour speed sign were posted well north of the crossing, although testimony of this fact was excluded (improperly, we think). Thus, anyone driving into town could not know that the crossing was within the city limits; if the signs were relied upon, the observer would necessarily believe the crossing to be outside the city limits. The respondent indicated such a

belief in his sworn complaint, wherein he alleged that the crossing was outside the city limits. The appellant railroad admitted this to be the fact in its answer. After respondent rested his case, the true city limits were established at the trial by a surveyor from the county assessor's office, who testified for appellant.

It may be noted that respondent's objections to this evidence were limited to challenging the qualifications of the surveyor and the authenticity of official records. These objections proved to be without merit. No objection to the variance between appellant's pleading and its proof was interposed by the respondent. The trial court thereafter proceeded upon the theory that the evidence of the official city limits was properly before it. Appellant's admission that the crossing was outside the city limits was waived by want of a timely objection. *Allen v. Schultz*, 107 Wash. 393, 181 Pac. 916, 6 A. L. R. 676; *Dummer v. Wheeler Osgood Sales Corp.*, 198 Wash. 381, 88 P. (2d) 453; Bancroft's Code Pleading 1021, § 727.

As indicated heretofore, appellant contends that violation of a statute is negligence *per se* unless the violator pleads and proves facts which would excuse the violation. It is further asserted that respondent neither pleaded nor proved any such excuse. In this particular case, it is a little difficult to see how the respondent could have consciously pleaded an excuse in the absence of any allegations by appellant charging such violation. Appellant, in its answer, specifically admitted that the crossing was *outside* the city limits of Cosmopolis. Furthermore, in its affirmative defense of contributory negligence, it failed to allege that respondent was driving in excess of twenty-five miles per hour, or that he was even speeding. We do not think that, under these circumstances, the respondent is to be limited by his failure to plead an excuse for violating the statute. Now, we shall consider whether the facts as set out above compel the conclusion that respondent was negligent *per se*.

■ This court has long been committed to the rule that violation of a positive statute constitutes negligence *per se*. But the rule has not been applied with relentless indifference to actual fault. We stated in *Brotherton v. Day & Night Fuel Co.*, 192 Wash. 362, 73 P. (2d) 788, the rule as follows:

"While it is true that violation of a statute is, generally speaking, negligence *per se*, it is also true that such violation is not negligence when due to some cause beyond the violator's control, and which reasonable prudence could not have guarded against. [Citing cases.]"

The most common instance where violation of a statute has been held not to constitute negligence *per se* is where the violation is excused by an emergency. In *Burlie v. Stephens*, 113 Wash. 182, 193 Pac. 684, a driver unsuccessfully attempted to avoid a collision with a child on skates by crossing to the wrong side of the street. In so doing, he violated a city ordinance. This court said:

"Circumstances may arise where it is entirely proper, in the exercise of reasonable care, to violate the ordinance by turning an automobile to the wrong side of the street. The mere fact that the automobile may be on the wrong side of the street at the time of the collision is not conclusive of negligence, because the driver of the automobile had a right to show why he so did and to excuse that action, and if the jury believed that, in the exercise of ordinary care under the circumstances, he was justified in turning to the wrong side of the street, there could be no negligence in such act upon which recovery could be had."

In the *Brotherton* case, *supra*, the tail-lights of defendants' truck burned out while it was being driven at night. As a result, plaintiff collided with the rear end of the truck. A statute required trucks to display lighted tail-lights after dark. The evidence indicated that the driver had inspected the lights shortly before the accident and found them working. This court held that defendants' violation of the statute did not constitute negligence *per se*, and observed:

"While engaged in night driving, the tail-light of a motor vehicle is a most important safety appliance, and yet it

may cease to function at any time without affording the most careful driver any means of knowing that it has ceased to shine."

In *Baldwin v. Washington Motor Coach Co.*, 196 Wash. 117, 82 P. (2d) 131, a car struck defendant's bus, which in turn, knocked down an arterial highway stop sign. As a result, two days later, another driver drove onto the arterial without stopping and collided with the plaintiff's intestate. Plaintiff sued the bus company, setting out a statute which made it a misdemeanor to deface, mutilate, tear down, or destroy public danger signals or warnings. The trial court instructed the jury to the effect that they should find for plaintiff if they found that the defendant, having knocked the sign down without negligence on its part, should reasonably have discovered the destruction and reported it to the proper authorities. The defendant objected to the charge on the ground that it imposed liability, even though the jury might find it was free from negligence. The trial court granted defendant a new trial after a verdict was found for the plaintiff. On appeal, the granting of the new trial was affirmed. The appellant there argued for a strict application of the doctrine of negligence *per se*, without regard to fault. In reply, this court said:

"If the respondent was not guilty of any negligence in knocking the sign down and did not know that the sign was knocked down, at most it could not be guilty of more than a technical violation of the statute and ordinance in question."

In *Discargar v. Seattle*, 25 Wn. (2d) 306, 171 P. (2d) 205, the plaintiff was struck by a bus while attempting to enter the left side of his car, which was next to the traffic. A city ordinance prohibited pedestrians from stepping into that portion of the street open to moving traffic at any point between intersections in the central district of Seattle. The trial court instructed the jury that the plaintiff was contributorily negligent as a matter of law for having walked into the street in violation of the ordinance. Only the ques-

tion of proximate cause was submitted to the jury. In reversing, this court said:

"The vice of the instruction is that the jury was charged that appellant was guilty of negligence *per se* merely because in violation of the city ordinance he stepped 'into that portion of the street open to moving traffic,' etc., without the qualification that, if he necessarily stepped into the street at a point so close to the parked truck that it was impracticable or impossible for him to enter his automobile by way of the right-hand door, then it was not negligence in and of itself for appellant to attempt to enter his automobile by using the left-hand doorway of the automobile.

"In its application, the language of the ordinance must be given a construction conformable to reason and common sense."

An analysis of the above cases indicates a reluctance by this court to impose liability by finding negligence *per se*; that is, negligence as a matter of law, *where no negligence exists in fact.* Such decisions are not intended to emasculate the doctrine of negligence *per se,* but rather to place it within rational judicial control.

In the instant case, we believe that the respondent's failure to observe the twenty-five-mile-per-hour speed restriction prior to reaching the actual location of the twenty-five-mile-per-hour and the city-limits signs was without fault or negligence in fact. The designation of city limits, merely by placing or entering such designation as a matter of record in a city, state, or county office, is not notice in fact to the traveling public. We said in *Lyle v. Fiorito,* 187 Wash. 537, 60 P. (2d) 709:

"Warning signs have of recent years become very numerous, and are properly and necessarily relied upon to give notice of physical facts which a driver should know."

The twenty-five-mile-per-hour and the city-limits signs were erected and apparently maintained for some time well inside the actual city limits of Cosmopolis. We think respondent driver, as a member of the traveling public using the state highway in question, had a right to rely on the signs and to assume that the city limits and the twenty-five-

mile-per-hour zone were located where the signs indicated them to be. In other words, the placing of the speed and city-limits signs north of the crossing and well inside the actual limits of the town is not without legal significance.

In *Mathias v. Eichelberger,* 182 Wash. 185, 45 P. (2d) 619, we held that a driver was not guilty of negligence when he relied upon one-way traffic signs which had for a considerable time been posted upon one of Olympia's streets. We expressly held that the fact that there may have been no legal authority for designating the street a one-way route was immaterial. In *Comfort v. Penner,* 166 Wash. 177, 6 P. (2d) 604, we said:

"Travelers upon public highways are not expected to first ascertain and determine whether such signs [stop signs] are established in strict compliance with law, before respecting them."

■ The collision occurred at the railway crossing. This was one hundred feet or more from the signs. It occurred before respondent reached the signs which would have been notice to him of the location of the speed zone and the city limits. Under these facts, we hold that respondent was not negligent *per se* in exceeding the statutory twenty-five-mile-per-hour speed limit while traveling that portion of the state highway south of the railway crossing and south of the twenty-five-mile-per-hour speed and city-limits signs.

■ Appellant next contends that respondent violated RCW 46.60.320, which provides:

". . . Any person operating a vehicle, other than those specifically mentioned above, shall, upon approaching the intersection of any public highway with a railroad or inter-urban grade crossing, reduce the speed of his vehicle to a rate of speed not to exceed that at which, considering the view along the track in both directions, the vehicle can be brought to a complete stop not less than ten feet from the nearest track in the event of an approaching train. . . ."

We have held that this section applies only when an *approaching* train is involved. In *Hendrickson v. Union Pac. R. Co.,* 17 Wn. (2d) 548, 136 P. (2d) 438, we said:

"It will be observed that the statute provides a rule of conduct for one approaching an intersection in the event a train is also *approaching*. It is designed to prevent a collision between a train and a vehicle at an intersection and to require the driver of the vehicle to be in a position to stop within a certain distance when he becomes aware that the train is approaching. It has nothing to do with the situation that exists after the train has gotten across the highway."

Appellant contends that, under the facts of this case, the respondent was guilty of contributory negligence as a matter of law in line with many of our decisions. Many of these decisions we reviewed in the *Hendrickson* case, *supra*, and concluded:

"Here, again, the impression might have been conveyed that . . . when one collides with a moving or standing train on a crossing, he is guilty of negligence as a matter of law. In the ordinary case, and particularly where the visibility is good, there can be no question about this, and reasonable minds cannot differ. In those cases where the visibility is poor the measure of care on the part of the user of the highway greatly increases, but we may have situations where reasonable minds might differ as to whether the user of the highway exercised the proper amount of care under the circumstances, and, in such case, the question becomes one for the jury."

We think that the question of negligence of appellant in occupying the crossing during the switching and coupling operations involving the matter of the adequacy of warning to respondent and the question of the contributory negligence of the respondent were for the jury.

The order of the trial court in granting a new trial is affirmed.

GRADY, C. J., MALLERY, and HAMLEY, JJ., concur.

OLSON, J. (dissenting)—Respondent was thoroughly familiar with the railroad crossing and its surroundings. In my opinion, it is so apparent that he failed to exercise reasonable care, under the circumstances, in approaching it, that there is no question of his negligence to submit to a jury.

This negligence contributed to his injuries, and therefore he is barred from any recovery in this action.

[*En Banc.* May 9, 1955.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the Departmental opinion heretofore filed herein.