THE ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY V. L. R. STANLEY.

No. 13,824.   (81 Pac. 176.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Improperly Kept Road-bed—Injury to Employee.* Evidence that the road-bed of a railway company at a point within its station grounds was made up in part of rubbish and sweepings from the depot, and that the rainfall from the roof of the depot was permitted to flow and remain upon the track at this place, and that in consequence of such character of the soil and of such discharge of water thereon it afforded a brakeman so insecure a foothold while he was engaged in making a coupling that he slipped and was injured, tends to sustain a charge that his injury was due to the negligence of the company in failing to keep its road-bed in a reasonably safe condition for the performance of his duties.

2. —— *Question for a Jury.* It cannot be said as a matter of law that a brakeman, under the circumstances stated, knew or ought to have known of the dangerous condition of the road-bed.

Error from Neosho district court; LEANDER STILL-WELL, judge. Opinion filed June 10, 1905. Affirmed.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.

*W. R. Cline, George W. Wright,* and *S. C. Brown,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: L. R. Stanley recovered a judgment against the Atchison, Topeka & Santa Fe Railway Company on account of an injury received while in its employ as a brakeman, and the company prosecutes error. The only question of law presented for review is whether the defendant was liable, admitting the facts to be as claimed by the plaintiff. As shown by the evidence, the accident occurred under these circumstances: Several freight-cars were standing

upon the house-track near the depot at Independence. It was desired to couple them to a part of the freight-train of which the plaintiff was a brakeman. To this end this part of the train was detached from the engine, after being given sufficient motion to carry it to such cars, the plaintiff accompanying it for the purpose of regulating its speed and doing whatever might be necessary to see that the coupling was properly made. As the portion of the train approached the standing cars the plaintiff alighted from the car on which he had been riding, adjusted its coupling gear, and ran on ahead to examine that of the stationary car. He found that the draw-bar was out of alignment, and attempted to push it into place with his right foot. As the cars came together his left foot slipped, causing him to lose his balance, and his right foot was caught between the couplers and so crushed that amputation was necessary. His slipping was due to the condition of the road-bed as affected by a recent rain.

The negligence charged against the company was in general terms the failure to keep its road-bed at the place of the accident in a reasonably safe condition for such work as its employees might have occasion to perform there in the discharge of their duties. This charge was supported by these specifications, adduced in the course of the testimony: The ground just outside of the track, instead of being ballasted with cinders or other material, or made of solid earth, was formed of loose dirt, rubbish, and sweepings from the adjacent depot, rendering it peculiarly unstable when wet. Its surface was not level, and sloped toward the track. The depot was not provided with eaves-troughs or other means of collecting and disposing of the water that fell upon its roof. Such water was allowed to follow its own course, and in consequence flowed upon the track at the place in question, where it was permitted to remain standing

for want of any method of drainage, thereby saturating the soil and making it incapable of affording a firm foothold.

The contentions of the railway company are: (1) That there was no showing of negligence on its part; (2) that the plaintiff's injury was the result of one of the assumed risks of his employment; (3) that it was due to his own negligence in unnecessarily adopting an unsafe method of effecting the coupling of the cars. So far as relates to the contention last stated, or to any question arising from the manner of making the coupling, it is sufficient to say that under the evidence affecting this matter, which it is not necessary to review in detail, the case is controlled by prior decisions of this court holding under not essentially different circumstances such questions to be for the determination of a jury. (*Brinkmeier v. Railway Co.,* 69 Kan. 738, 77 Pac. 586.)

The argument of the plaintiff in error upon the two other propositions proceeds upon the assumption that the injury was occasioned merely by the soil's becoming slippery through being wet by the falling rain— a condition that arose from the operation of natural causes and was obvious to any person of ordinary perception. If these premises be allowed the conclusion follows logically that the company could not be held responsible, for it of course was under no obligation to roof its station grounds, and the brakeman must be deemed to have known the effect of an ordinary rain upon ordinary soil. But to say that this is all that the case involves would be to ignore the special circumstances upon which the plaintiff relied for a recovery.

Granting that a railway company cannot be required to use artificial ballast upon its road-bed, even in its depot grounds, and that any irregularity of surface is immaterial with respect to switching operations performed in the daytime, it remains to consider

the effect of the evidence, which this court must accept as true, that the condition complained of arose not from the natural fall of the rain upon the natural soil but from water that had fallen elsewhere flowing and remaining upon a road-bed rendered peculiarly susceptible to moisture by being made in part of rubbish and sweepings. This was a condition that could have been avoided or corrected, and the fact that it was permitted to exist, and to continue, tended in some degree to establish the claim that the company was negligent in failing to keep its road-bed reasonably safe for the performance of the duties required of its employees. The plaintiff is not chargeable with knowledge of the dangerous condition of the road-bed. The jury found that he did not in fact know of it. The finding has support in the evidence, and it cannot be said as a matter of law that his opportunities for examination were such that in the exercise of reasonable care and diligence he must have discovered it. These considerations require an affirmance of the judgment.

The jury, in answer to several interrogatories submitted, not content with returning categorical answers, added explanatory statements having the color of arguments in support of the general verdict. While the practice is a bad one, it cannot be said that in this case its adoption showed such an unfair or biased attitude as to require a new trial.

The judgment is affirmed.

All the Justices concurring.