No. 29,196.

Mary Zumbrun, *Appellant,* v. The City of Osawatomie, *Appellee.*

(288 Pac. 584.)

Opinion filed June 7, 1930.

*Jabez O. Rankin,* of Paola, for the appellant.

*Frank M. Sheridan* and *Bernard L. Sheridan,* both of Paola, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This action was brought by Mary Zumbrun in behalf of herself and her minor child against the city of Osawatomie, to recover damages sustained by the death of her husband, alleged to have been killed by the negligence of the city in maintaining an electric-light plant which it owned and operated. The city denied the charge of negligence and alleged that Zumbrun's death was the result of his contributory negligence. At the close of plaintiff's evidence defendant's demurrer to her evidence was sustained and judgment given in favor of defendant. She appeals.

It is conceded that the city owns and is operating an electric-light plant, that Zumbrun came to his death at the time and place stated and when he was in contact with one of the wires of the system, and that due notice of the time and place of the accident was given to the city by plaintiff. It is also conceded that Zumbrun

was a qualified and experienced electrician, and for more than a year had been an employee of Otis Pierce, who was carrying on a general electric business in Osawatomie. Pierce, it appears, sent him to a two-story building to move a drop light in the upper story. To accomplish this it was necessary for him to go into the attic through a hatchway in the ceiling of the second story. Shortly after he went into the attic an unusual noise was heard which attracted the attention of others, and going up there they found him with his wrist lying over a wire, apparently lifeless, with an electric burn on his wrist and one on his foot. A pulmotor was at once obtained and used upon him, but without restorative effect.

The electrical system of the defendant was a three-wire system, leading to the building where the accident occurred, consisting of a neutral wire and two hot wires. A current of 2,300 volts is carried up to a transformer, where it is reduced to about 110 volts, conveyed on wires to buildings for lighting purposes. There was testimony to the effect that it was necessary to provide a ground wire on the neutral at the transformer for the protection of life and from fire, and that where there is no grounding of that wire, and there happens to be a grounding elsewhere on the system, all the power is thrown on one of the hot wires, increasing the voltage from 220 to 230. A voltage of 110, it appears, will not cause injury to workmen or others coming in contact with it, but that 220 to 230 will kill those who make contact with the system. There was evidence that there was no grounding of the neutral wire at the transformer or the wires leading to the place in question. After the accident a number of tests were made and showed that when grounded elsewhere the hot wire carried from 217 to 228 volts. It is contended by the plaintiff that her evidence tended to establish every element necessary to a recovery. Testimony was produced tending to show that in such a system it was the duty of the city to ground the wire at the transformer, that the wire with which some one came in contact carried double the voltage usually carried in a lighting system, and that Zumbrun came to his death by accidentally coming in contact with an overcharged wire, fed from defendant's defective system, and that if the neutral wire had been grounded the wire with which he came in contact would have carried only about 110 volts, which would not have killed or seriously injured him, and that under the evidence it was a question for the jury to determine whether his death was the result of defendant's negligence.

The defendant contends that plaintiff failed to make out a *prima facie* case of negligence on its part, and that Zumbrun came to his death by some accidental or unknown cause not disclosed by the evidence. There is a further contention that the evidence discloses that Zumbrun failed to exercise ordinary care for his own safety, that he was working in a place of peril, a danger observable by any intelligent workman, and that being a trained electrician, the danger in the situation was necessarily known to him, and his failure to take precautions that an ordinarily prudent person would, the fault was his own and no recovery can be had for the fatal result of the operation.

As shown, the case was disposed of upon a demurrer to plaintiff's evidence, the court holding that that offered by plaintiff precluded a recovery. The force of the evidence must be measured by the rules applicable where a demurrer to evidence is sustained. One of the rules is that a court cannot weigh conflicting evidence, but must take as true every part of it favorable to plaintiff which tends to prove his case. (*Wolf v. Washer*, 32 Kan. 533, 4 Pac. 1036; *Rowan v. Rosenthal*, 113 Kan. 604, 215 Pac. 1008.) If there are contradictions in the testimony offered or even in that given by a single witness, the court is not warranted in determining that evidence favorable to the plaintiff has been neutralized or destroyed by other conflicting evidence or contradictions of a witness relating to the same fact. That which is unfavorable to plaintiff must be discarded or laid aside, and that which is favorable must be accepted as the truth even though both come from the mouth of the same witness. In *Acker v. Norman*, 72 Kan. 586, 84 Pac. 531, it was decided:

"It is error for a trial court to sustain a demurrer to the evidence because there is a conflict between plaintiff's testimony in chief and that given upon cross-examination. The court cannot weigh the evidence. If there is any evidence whatever to support plaintiff's case it must be left to the jury to decide its weight and credibility."

Every fact which any of the favorable evidence of plaintiff tends to prove in support of his case and all that fairly may be inferred from such evidence, must be accepted, and if these fairly tend to sustain plaintiff's cause of action the demurrer should be overruled. Contradictions and conflicts of evidence must go to the jury or the trier of the facts for determination.

Touching the evidence in the record, there appears to be sufficient evidence to show that Zumbrun came to his death by contact with an electric wire which was a part of an electric system maintained by the defendant. The question arises whether there is testimony tending to show that the system was negligently maintained and that the death of Zumbrun was due to the negligence charged. Witnesses describe the electric plant as a single-phase three-wire system, consisting of a neutral wire and two outside hot wires. The wires leading from a transformer to buildings to be lighted are called a secondary system. In lighting a building current is carried by a neutral wire and two hot wires and sometimes the hot wires are conducted through different parts of a building. They carry from 110 to 115 volts, and if one of them should be accidentally grounded at some other place the voltage is doubled, and when that occurs the increased voltage is such that contact with a wire by anyone is liable to injure or kill, while 110 volts would not have that effect. One electrician, when asked if it was necessary or that safety required the neutral wire should be grounded at the transformer, said, "It most certainly is."

"Q. If the neutral wire isn't grounded and one of the hot wires should have an accidental ground, what effect would it have upon the other? A. You would get 220 volts, and sometimes—hardly ever, though—you are liable to get 2,300."

Another electrician testified:

"Q. I will ask you as an electrician, from your experience, whether that neutral wire should or should not be grounded? A. Well, for protection of fire and life we think it ought to be grounded.

"Q. If the neutral wire is grounded and there is a shortening of one of the hot wires, what would be the effect on the other? A. The effect would be that the voltage would still be 110 from the fact that the ground would show the balance.

"Q. And if the neutral isn't grounded, and there is an accidental ground on one of the other wires, what would be the effect of that? A. It would throw the voltage of one of the secondary wires all on the other.

"Q. In other words, it doubles the voltage? A. Yes, sir."

A test was made after the accident by a grounding process, and it showed the secondary wire to carry a voltage of between 228 and 230.

A witness produced a book called the National Electric Code, and testified that it was a standard code for electric wiring and used generally by electricians all over the country, and that if any wiring

is done which does not come up to the code standard, it can be condemned by the proper authorities and rewiring can be compelled. The code, he said, was in force in Kansas, used by the state fire marshal of Kansas, and applicable in an alternating system like the one at Osawatomie, and provides that grounding is necessary if the voltage exceeds 150. Testimony was received to the effect that a voltage of 110 to 120 would not have killed or seriously injured a young, healthy man as Zumbrun was shown to be. The evidence fairly tends to show that safety, not only of workmen but of others that might come in contact with the wiring system, required a grounding of the neutral wire, and that if it had been done injuries like that suffered by Zumbrun could have been averted. The evidence, we conclude, tends to show that the system of the defendant was defective, was negligently maintained by it, and that its negligence contributed to the death of Zumbrun.

Considerable is said as to a number of contradictions in the testimony of witnesses and that some brought out on cross-examination showed inconsistencies which tended to weaken the force of other parts of the evidence, but under the rule applicable upon a demurrer to the evidence as already pointed out, only that which is favorable to the plaintiff is to be considered and that which is unfavorable is to be left out of consideration. It may be that if the evidence produced had been submitted to the court upon the merits to be determined, upon the preponderance of the evidence deemed to be credible, its decision that the plaintiff had failed to show a right of recovery would be unassailable. Upon the demurrer, however, the court cannot weigh conflicting evidence, determine credibility of witnesses, or settle which of two contradictory statements by a witness should be accepted as the truth.

The further contention is made in support of the ruling on the demurrer to the evidence that Zumbrun was shown to be guilty of contributory negligence, and therefore a recovery is barred. It is contended that he was a trained electrician of six years' experience and had been at work for Pierce in a shop of the city for more than a year, and hence knew, or should have known, of the perils incident to the electrical work at the place of the accident. It is contended that he went into the attic where the roof of the building was only two and one-half feet above the ceiling, on which there were a number of metal pipes, and necessarily had to work in a reclining and cramped position, and that his feet were placed on a

gas pipe, which made a ground from the hot wire through his body to the gas pipe, and thus he was killed by the current. It is further contended that he could have avoided the risk by switching off the current or pulling the fuses from the block in the upper hall of the building. It may be conceded that the handling of electric wires while the current is on involves danger and that one so engaged should exercise such care as the danger of the surroundings would suggest to a man of ordinary prudence. As to the contention that Zumbrun should have known that there was no grounding of the wire at the transformer, the evidence does not show that he did know, and as the case was presented presumptions cannot be indulged against him. In the absence of evidence of knowledge he would be warranted in assuming that the plant was properly constructed. Concerning the fact that the fuses were not pulled when he went to work, there is some testimony that they were removed when he first went to the building, and that before completing the work he went back to the shop for some purpose not shown, and that he soon returned to finish the job. The fuses were found to be in the block when the accident occurred, but by whom they were replaced was not shown. There were a number of people in and about the building at the time of the accident. There was testimony that in doing the work he was engaged in it would have been prudent to have pulled the fuses or cut off the current. Other evidence was to the effect that it was not necessary to pull the fuses or cut off the current. This was evidently based upon the theory that not more than 110 to 115 volts of current would be carried over the wires if the system had been properly constructed and maintained. Some evidence was presented which tended to show that the risk could have been avoided if he had exercised caution to cut off the current while he was shifting the drop light. Whether he was guilty of contributory negligence is an affirmative defense and the burden of establishing it rests upon the party who asserts it and not upon the opposite party to disprove it. Where the evidence is open to different inferences the negligence charged against the plaintiff becomes a question of fact for the jury, and where reasonable minds might differ, it is error to take the case from the jury. (*Eidson v. Railway Co.,* 85 Kan. 329, 116 Pac. 485; *Bowers v. Mildren,* 107 Kan. 584, 193 Pac. 318; *Heck v. Quindaro Township,* 113 Kan. 647, 216 Pac. 293.) Where there is no dispute in the evidence

as to negligence, and only one inference is possible, the question becomes one for the court, but under the evidence the present case does not come within that rule.

As to whether Zumbrun was chargeable with knowledge that the neutral wire was not grounded, reference is made to *Railway Co. v. Stanley,* 71 Kan. 520, 81 Pac. 176, where it was held in a somewhat similar case that whether an injured person should have knowledge of the dangerous condition of the place was not a question of law for the court. We are of the opinion that under the evidence the question of whether Zumbrun was guilty of contributory negligence was one for the determination of the jury.

In a cross appeal defendant claims that upon the pleadings and the opening statement of counsel for plaintiff it was entitled to judgment. The court denied its motions, and in view of the conclusions reached and the statements in the record it is clear that there is no merit in the complaint.

Some other questions discussed do not appear to require special attention. The judgment is reversed and the cause remanded for a new trial.