No. 36,312

KATHERINE STAAB, JULIA STAAB, ELIZABETH STAAB BERENS, MARIE STAAB DWYER, and ALOIS W. STAAB, *Appellants*, v. ALEX V. STAAB, JOHN C. STAAB, and CHRISTINA STAAB, His Wife, *Appellees*.

(163 P. 2d 418)

Opinion filed November 10, 1945.

*Earl H. Hatcher, Clayton M. Davis,* both of Topeka, *C. R. Holland,* of Russell, and *D. M. McCarthy,* of Hays, were on the briefs for the appellants.

*Henry F. Herrman,* of Hays, and *Jerry E. Driscoll,* of Russell, argued the cause for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to enforce a trust relating to land. Defendants' demurrers to plaintiffs' evidence were sustained and plaintiffs appeal.

The appellants are five heirs at law of the decedent, Carl Staab. Appellees are two heirs at law, sons of decedent, and the wife of one of them. This case was previously before us on a demurrer to the

petition which the trial court overruled. We affirmed that ruling. (*Staab v. Staab,* 158 Kan. 77, 145 P. 2d 452.) At the same time we also affirmed an order overruling a demurrer to a petition in a related case between the same plaintiffs and the decedent's sons, John and Alex Staab, involving other lands owned by the decedent which he deeded to the above-named sons. (*Staab v. Staab,* 158 Kan. 69, 145 P. 2d 447.)

The petition in the instant case was framed in two counts. The first count was predicated on the theory of a constructive trust which grew out of an alleged oral contract made in 1929 between the father and the defendants, John and Alex Staab, in which the father was alleged to have furnished the purchase price for the one-half section of land involved with the understanding the father was to have the income therefrom during his lifetime, that John and Alex were to hold the title to the land in trust for him and at his death they were to divide the land among his seven children, share and share alike. It was also alleged, however, that the deed was made to Alex and Christina Staab, the wife of John Staab, instead of to Alex and John for the reason that there was a judgment outstanding against John which they did not want enforced against the land in question. It was further alleged:

"Christina Staab claimed no title to the land, has no interest therein, and has exercised no control over it, but held it for John C. Staab under the agreement which John C. Staab and Alex V. Staab had made with their father, Carl Staab."

Our statutes relating to the enforcement of trusts arising by implication of law were treated in the former opinions in the Staab cases, *supra,* and what was said upon that subject need not be repeated at length here.

The second count of the petition was based on actual fraud, it being in substance alleged the defendant sons at the very time of obtaining the deed in 1929 had no intention of carrying out the trust agreement made with their father but fraudulently acquired the title to the land themselves. The trial court sustained the demurrers to the evidence with respect to actual fraud and appellants do not claim error in that respect.

The grounds of the three separate demurrers were: (1) The evidence failed to establish any cause of action; and (2) if plaintiffs ever had a cause of action it was barred by the statute of limitations.

The alleged contract was, of course, the foundation of the action. It was alleged the deed was procured on October 22, 1929, pursuant to the alleged trust agreement made at that time by the aged father and the two named sons. We shall therefore first consider the case in its relation to the principal defendants, John and Alex Staab, and treat the case against Christina Staab later. In order to establish a constructive trust, based upon the allegations of the petition in this case, it was necessary to prove (1) the existence of a confidential relation between the aged and uneducated father and the defendant sons; (2) a transaction induced by that relation; and (3) a breach by the sons of the confidence reposed. (*Staab v. Staab,* supra, p. 80; *Staab v. Staab,* supra, p. 73.)

Did the evidence sufficiently establish the elements of a constructive trust to withstand the demurrers of John and Alex? Before we analyze appellants' testimony it seems well to emphasize certain well-established principles governing a ruling on a general demurrer to evidence. Such a demurrer tests only the legal sufficiency of the evidence. In passing on the demurrer courts cannot weigh evidence; they must disregard all unfavorable evidence and consider only evidence favorable to the parties adducing it; they must give full credence to the evidence adduced and construe all inferences which reasonably may be drawn therefrom in the light most favorable to the parties adducing it. If the evidence, considered in harmony with these principles, fairly tends to establish a cause of action or defense, the demurrer should be overruled. (*Zumbrun v. City of Osawatomie,* 130 Kan. 719, 721, 288 Pac. 584; *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903; *Myers v. Shell Petroleum Corp.,* 153 Kan. 287, 110 P. 2d 810; *In re Estate of Bond,* 158 Kan. 776, 781-782, 150 P. 2d 343.)

It is true we consistently have held the evidence of an oral contract of this character pertaining to land must be such as to raise a "convincing implication" that the contract was actually made and that it must satisfy the court of its terms. Simply stated, we have said such a contract must be established by clear and satisfactory proof whether the evidence be direct or circumstantial. (*Bichel v. Oliver,* 77 Kan. 696, 95 Pac. 396; *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665; *In re Estate of Bond,* 158 Kan. 776, 150 P. 2d 343.) That character and extent of proof is properly required by a trial court after the case is submitted for final decision upon its merits. The evidence, however, need not reach that high degree of definite-

ness and certainty when tested by demurrer. When so tested the general principles applicable to a ruling on a demurrer, previously stated herein, control. Of course, where evidence on some essential element of the cause of action is wholly lacking a demurrer is properly sustained. (*In re Estate of Bond,* supra, 780-782.)

Applying these principles to appellants' evidence, should the demurrers have been sustained? Their evidence properly considered on demurrer, in substance, disclosed:

The father, Carl Staab, died testate in 1937 at the age of eighty-one; his wife had died in 1916; they had seven children, three sons and four daughters; most of the children early went their separate ways, but the defendant sons, John and Alex, remained on the home place with the father and helped him with the farm operations on the home place and on other lands he had acquired; the daughter Katherine remained with the father and sons until 1923; thereafter the children who were away visited at the home place only occasionally; the father was a German and could neither read nor write English; he could not sign his own name; he, John and Alex got along well together; while the father probably was as close to one of these sons as he was to the other he had John aid him in his business affairs and especially with respect to such matters as required the execution of written instruments; on October 22, 1929, the father concluded to buy some additional land in Ellis county, the half section involved in this case; title thereto was acquired from Charles W. Johnson, receiver of The Citizens State Bank of Hays, by quitclaim deed; the deed was recorded October 25, 1929; the land was subject to a mortgage which the grantees assumed and agreed to pay; the purchase price was paid by a check drawn on the bank account of the father in another bank; the mortgage was paid by a check drawn on the same bank account on October 30, 1929; that the purchase price of the land involved was paid by the father was admitted by John according to appellants' evidence.

The abstract of the testimony of Roy Dwyer, husband of Marie Staab Dwyer, concerning a conversation he had with John is as follows:

"In his conversation with John in December, 1937, John said that the half section of land *was bought by his father, with the understanding* that upon the father's death the land was to be divided; that the father was to have this income and upon his death it was to be divided among his children." (Our emphasis.)

After oil production activity had started in the vicinity of the father's land and a well was partly drilled on the home place in May of 1937, Elizabeth Staab Berens, in substance, testified:

She overheard a conversation on Easter Sunday of 1937 between her father, John and her own husband, in which John admitted he, Alex and their father had an agreement that the children were all to share alike in the father's property (that conversation pertained to the sale of oil royalties); she had a conversation with John on May 2, 1937, in which John admitted the same agreement with the father to divide the land, share and share alike.

Julia Staab, in substance, testified: John had told her on May 9, 1937, the agreement with Alex and their father was that the father should have a life interest in *all of the property* he had and that thereafter the *land and oil* was to be divided share and share alike among the children.

Much similar testimony was adduced by various witnesses relative to the alleged trust agreement. Other testimony, in effect was:

John on various occasions after the father's death persuaded appellants it was not a good time to divide the property; he gave his reasons therefor; he stated at various times the property would be divided at a later date; appellants trusted Alex and John and had implicit confidence they would make the division as promised; appellants waited until July 11, 1941, and on that date all of the appellants, except Alois W. Staab, met at Hays, Kan., and decided it was time to have a division of the property; on that date a demand was made on John and Alex for a settlement; the demand was refused; John stated to Roy Dwyer, "They have waited too long; I don't have to do nothing."

The contract is the foundation of plaintiffs' right to recovery. (*Woltz v. First Trust Co.*, 135 Kan. 253, 259, 9 P. 2d 665.) For the purpose of the demurrer it is admitted the purchase price for the land was furnished by the father. At the time of the purchase in October, 1929, it was understood the father was to have the income from the land during his lifetime and that upon his death the land was to be divided among all the children share and share alike. There is evidence which tends to show the agreement was interpreted by the contracting parties to include the oil produced from the land.

The deed did not contain the above-mentioned terms but contained only the ordinary provisions of a quitclaim deed for the con-

veyance of title to land. The evidence, however, fairly tended to disclose not only that the above-described oral agreement was made at the time the deed was executed in 1929 but also that the agreement was recognized by John and Alex until July 11, 1941. We think this evidence, when tested by demurrer, was sufficient to prove the alleged agreement.

Was the evidence sufficient to show a confidential relationship existed between the father and his sons, John and Alex, to withstand a demurrer? They had been conducting farming operations for many years. They got along well together. The aged and uneducated father, unable to read or write English or to sign his own name, depended upon John in all matters pertaining to written instruments. It stands to reason he looked to John to see that the instrument in question reflected their agreement or that he trusted John and Alex to carry out the oral agreement. In either event he placed his trust and confidence in them. He believed they would do what he wanted done and what they had agreed to do. In *Lindholm v. Nelson,* 125 Kan. 223, 264 Pac. 50, the third paragraph of the syllabus reads:

"A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." (Syl. ¶ 3.)

And in the opinion we stated:

"The courts have consistently refused to give an exact definition to, or to fix definite boundaries of, that class of human relations which, by principles of common honesty, require fair dealing between the parties, and which is commonly known as fiduciary relations." (p. 232.) (See supporting authorities cited.)

To the same effect is *Miller v. Henderson,* 140 Kan. 46, 33 P. 2d 1098; and see, also, *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 138 Texas 565, 160 S. W. 2d 509; 15 C. J. S. Confidential, pp. 821-823; 36 C. J. S. Fiduciary, pp. 742, 743. Tested by these principles we think the evidence was sufficient, when challenged by demurrer, to show the existence of a confidential relationship between the father and these two sons and that the deed was induced by that relationship.

Under familiar precedents, when a confidential relationship between certain members of the family involved has been established,

the burden is cast on a grantee to show the conveyance was made in good faith and for a valuable consideration. (*Overstreet v. Beadles*, 151 Kan. 842, 101 P. 2d 874, and cases therein cited.) In this connection it also may be observed there was no evidence the aged father had independent advice concerning the legality of the oral contract or the terms and provisions of the deed. Under rather similar facts in *Overstreet v. Beadles*, supra, we said:

"While the statute requiring the need of independent advice in the making of a will where a fiduciary relationship exists between the testatrix and the principal beneficiary (G. S. 1935, 22-214, now superseded by Laws 1939, ch. 180, § 41) does not extend to the making of deeds or gifts, yet equity applies the same principles under similar circumstances to test the bona fides of the latter transactions. (*Barger v. French*, 122 Kan. 607, 612, 253 Pac. 230; *Madden v. Glathart*, supra, 473-475, and syl. ¶ 3.)

"See, also, 'Anno.—Fraud—Confidential Relations—Advice,' in 123 A. L. R. 1505 *et seq.*" (p. 847.)

The second ground of the demurrer was that if plaintiffs ever had a cause of action it was barred by the statute of limitations. Appellees specify no particular statute but we assume they have in mind the two-year statute of limitations (G. S. 1935, 60-306, *Third.*) upon which they relied in the former appeal in the same case. The argument is the father died in 1937 and this action was not filed until September 11, 1941. Appellees also direct our attention to certain testimony of Katherine Staab which indicates she knew or suspected in 1937 that John would not make a division of the property pursuant to the alleged trust agreement. If this were all of the evidence in point we might have difficulty with the contention. There was considerable testimony, however, that John and Alex recognized the trust agreement all along; that they promised to execute it and appellants believed they would do so until the agreement was finally repudiated on July 11, 1941. The statute of limitations did not begin to run until the breach of the contract, the repudiation of the trust, and the action was in time. (*Staab v. Staab*, supra, p. 77; *Staab v. Staab*, supra, pp. 69, 75.)

What about the separate demurrer of the grantee, Christina Staab, wife of John Staab? There was evidence which fairly tended to show Christina had knowledge of the alleged trust agreement between her husband, Alex and their father. There was likewise evidence which tended to show Christina knew she was named as one of the grantees merely to prevent collection of an outstand-

ing judgment against her husband and that under the trust agreement she would obtain nothing. Under the circumstances Christina was not a real party in interest. Having knowledge of the circumstances she acquired no better title than her husband would have acquired had the title been taken in his name. She was merely a nominal titleholder for the protection of her husband's claimed interest. Her husband, the real party in interest for whom she held the title, recognized the trust until July 11, 1941, and thereby tolled the statute of limitations. The result is the evidence was sufficient to withstand Christina's general demurrer as well as her contention the action was barred.

Touching the general demurrer we may further observe the property involved was trust property. Christina had knowledge of its character. She paid nothing for it and appellants were entitled to pursue it. (*Clingman v. Hill*, 113 Kan. 632, 634, 215 Pac. 1013.)

Having stated earlier herein that Carl Staab died testate it may be well to also say that his last will dated July 24, 1931, made no devise of any specific real estate, but contained only a residuary clause under which all of his property not needed for the payment of debts and funeral expenses and not disposed of by specific money bequests was devised to John and Alex in equal parts. None of the parties claims the land in question is a part of decedent's estate. Appellees claim title to the land under the deed of October 22, 1929, and appellants' claim to an interest therein is based on the trust agreement of the same date.

Upon the trial of the case on its merits the district court will, of course, have not only the right but it will be obliged to consider and weigh all of plaintiffs' evidence as well as that of the defendants and to render such judgment as the evidence warrants. All we are now saying is that the favorable portion of appellants' evidence together with all favorable inferences which reasonably may be drawn therefrom, when accepted as true as it must be on demurrer, was sufficient to withstand the demurrers. We are not now passing on the question whether all of appellants' evidence, when scrutinized and weighed as it must be in a trial on the merits, would justify the relief sought.

From what has been said it follows the order sustaining the demurrers must be reversed. It is so ordered.