298 P.2d 1034

Marshall L. MITCHELL and Pearl M. Mitchell, husband and wife, Appellants,

v.

Magnus EMBLADE, Appellee.

No. 6094.

Supreme Court of Arizona.

June 26, 1956.

Shimmel, Hill & Cavanagh, Phœnix, and Westover & Mansfield, Yuma, for appellants.

Rolle, Jones & Pace, Yuma, for appellee.

WINDES, Justice.

Magnus Emblade brought suit against Marshall L. Mitchell and Pearl M. Mitchell, husband and wife, seeking damages resulting from the collision between a motorcycle operated by plaintiff and an automobile driven by defendant Pearl M. Mitchell. The collision occurred on 4th Avenue (Highway 80) between 14th and 15th Streets in Yuma, Arizona, on March 12, 1954. Mrs. Mitchell, while proceeding north on 4th Avenue, attempted to make a

left turn into a driveway leading to a parking area near her husband's place of work and in so doing collided with plaintiff who was proceeding south. The basis of plaintiff's suit is the alleged negligence of Mrs. Mitchell in the operation of her automobile. Defendants claimed contributory negligence on the part of the plaintiff. The matter was tried to a jury which returned a verdict in favor of plaintiff in the sum of $15,000. From this verdict and judgment entered thereon and denial of motion for new trial defendants appeal.

At the trial plaintiff testified he was driving at a speed of approximately 30 miles per hour and that on the west side of 4th Avenue between 12th and 13th Streets (approximately two blocks from the scene of the accident) there was a highway sign designating the speed limit to be 35 miles per hour. The evidence was in conflict as to the existence of the sign at this location. Plaintiff also testified that on the west side of 4th Avenue at 8th Street there was a 25-mile per hour sign for southbound traffic and a like sign on the east side of 4th Avenue at 16th Street for northbound traffic. Over defendants' objection the court admitted in evidence an ordinance of the City of Yuma passed in 1946 and a resolution of the state highway commission adopted in 1948 fixing a maximum speed limit in the area where the accident occurred at 35 miles per hour. The resolution was apparently adopted under the power given the highway commission

by section 59–105(6), A.C.A.1939 [A.R.S. § 18–106, subd. 7], to

"exercise complete and exclusive control and jurisdiction of the state highways, and prescribe such rules and regulations to govern the use of all state highways as it may deem necessary for public safety and convenience * * *."

The undisputed evidence shows this area to be a business district as defined by section 66–151q, 1952 Supp., A.C.A.1939 (A.R.S.1956, § 28–107).

Defendants' contention in the trial court and in this court is that the legislature in 1950 enacted a highway code which established a maximum speed limit of 25 miles per hour in business districts and this law operated to supersede the prior ordinance and the highway commission resolution. At the times the ordinance and resolution were passed and adopted, the statutes fixed the maximum speed limit in business districts at 20 miles per hour, section 66–101, A.C.A.1939, and gave local authorities power to increase this maximum. Section 66–102, A.C.A.1939. By the new act passed in 1950 these sections were repealed and a maximum limit of 25 miles per hour provided for business districts, section 66–157a, 1952 Supp., A.C.A.1939 (A.R.S.1956, § 28–701), and local authorities with the approval of the highway commission were given the power to increase this limit. Section 66–158a, 1952 Supp., A.C.A.1939 (A.R.S.1956, § 28–703). The new statute like-

wise changed the definition of business districts. Section 66–151q, 1952 Supp., A.C.A. 1939 (A.R.S.1956, § 28–107).

It is our view that the later law changing the definition of business districts and changing speed limits would operate to render inoperative and ineffective the prior ordinance and resolution. A statute passed by the legislature which is in conflict with a prior ordinance prevails over the ordinance, as well as over any resolution of the highway commission. Harshaw v. Kansas City Public Service Co., 154 Kan. 481, 119 P.2d 459; Pleasant Grove City v. Lindsay, 41 Utah 154, 125 P. 389. Cf. Clayton v. State, 38 Ariz. 135, 297 P. 1037. The legal speed limit in the area was an important question. The judge gave no instruction on this subject except to tell the jury no person shall drive at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. The documents cannot be used to establish a 35-mile speed limit in the business district where this accident occurred. The plaintiff testified he was driving about 30 miles per hour. In effect the jury was told by the admission of these documents that this was a legal rate of speed in accordance with established municipal law and legal action by the highway commission. The jury might well say that whether the 35-mile sign existed, it was reasonable and prudent to drive at not to exceed the 35-mile limit designated in the ordinance and resolution. Their admission was preju-

dicial to the defendants on the question of contributory negligence.

Since the case must be retried for this error, we will pass upon the other claimed errors for the guidance of the trial court. The defendants asked and the trial court refused two instructions: one proposing to tell the jury that where no special hazards existed the lawful speed in a business or residential district was 25 miles per hour; and the other submitting to the jury the question of fact whether the area was a business district and, if such be the case, that the speed limit was 25 miles per hour. Although the undisputed evidence established that this was a business district, the first instruction was incorrect if there was a 35-mile sign on plaintiff's side of the road between 12th and 13th Streets. It was correct only in the event the sign was not there. Speed highway signs are for the purpose of advising the driving public and a driver is entitled to rely on their authenticity. He cannot be expected nor required to investigate and determine whether such signs are placed there in the regular course of legal procedure. Comfort v. Penner, 166 Wash. 177, 6 P.2d 604; Wood v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 45 Wash.2d 601, 277 P.2d 345, 283 P.2d 688. He has a right to presume it was legally placed. In the event there be any legal irregularity in establishing such signs, absent other conditions amounting to negligent speed, he cannot be held negligent for having violated the

speed limit so long as he complied with the requirement of the sign. Wood v. Chicago, Milwaukee, St. Paul & Pacific R. Co., supra; Clinkscales v. Carver, 22 Cal.2d 72, 136 P.2d 777. If there was a sign advising plaintiff that the speed limit was 35 miles per hour, he cannot be held to be negligent merely for driving 30 miles an hour. If there was no sign, the speed limit by statute was 25 miles per hour and driving 30 miles per hour was negligence per se; and if this contributed to the accident, plaintiff could not recover. The instruction submitted to the court did not provide for the existence or nonexistence of the 35-mile speed limit sign and were therefore properly refused.

■ Defendants suggest that even if the instructions submitted on speed were erroneous, it was the obligation of the court to give a correct instruction. The court did advise the jury that the speed must be such as is prudent under the conditions. This is a correct abstract statement of the law. If the defendants desired a more explicit instruction, it was their obligation to submit a correct one applicable to the possible facts. Southern Arizona Freight Lines v. Jackson, 48 Ariz. 509, 63 P.2d 193; Kinman v. Grousky, 46 Ariz. 191, 49 P.2d 624.

■ The defendants requested an instruction that damages for medical expenses and pain and suffering were not subject to income taxes and that, in the event the jury found for the plaintiff, it could take into consideration this fact in fixing the amount of plaintiff's damages. The court refused the instruction and error is assigned.

This is a question of recent origin. Only a few jurisdictions have passed thereon. In Missouri such an instruction was held proper. Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42. The appellate court of Illinois followed the Dempsey case in Hall v. Chicago & N. W. Ry. Co., 349 Ill. App. 175, 110 N.E.2d 654. That case was taken to the supreme court of Illinois, Hall v. Chicago & Northwestern Railway Company, 5 Ill.2d 135, 125 N.E.2d 77, 85, which reversed the appellate court, stating:

"Further, the jury was correctly instructed on the measure of damages, being told specifically the elements that they should consider in awarding damages. Hence, unless it be assumed that they might not follow the instructions, there could be no purpose in mentioning anything about the award not being subject to Federal income tax. However, by the very nature of the jury system this court cannot indulge the presumption that juries do not follow the instructions of the courts. The Supreme Court of the United States, in Wilkerson v. McCarthy, 336 U.S. 53 at page 62, 69 S.Ct. 413 at page 418, 93 L.Ed. 497, said: 'Courts should not assume .that in determining those questions of negligence juries will fall short of a fair performance of their constitu-

tional function. In rejecting a contention that juries could be expected to determine certain disputed questions on whim, this Court, speaking through Mr. Justice Holmes, said: "But it must be assumed that the constitutional tribunal does its duty, and finds facts only because they are proved." [Citing case.]' It may be conceded that the possibility of harm exists if the jury is left uninformed on this matter; on the other hand, it is conceivable that the plaintiff could be prejudiced if they were told of this law. In either case, however, the possibility is speculative and conjectural, and such being the case, it is better to instruct the jury on the proper measure of damage and then rely on the presumption that they will properly fulfill their duty by following said instructions.

"It does not necessarily follow that the argument is proper because it correctly states the law. For if the defendant's argument is proper on the basis that it tells the jury what the law is then what objection can there be for plaintiff's counsel to state that the expense of trial is not provided for in the instruction concerning damages, that the cost of medical witnesses is not paid by the defendant, that the expense of taking depositions, as well as court reporting at the trial, must be borne by the individual litigants, that the fees of plaintiff's attorney are not recognized as an element, that the defendant can deduct any award it pays from its income and excess profits tax return and that the amounts of awards are allowed as expenses in providing for increasing railroad fares?"

Texas by way of dictum approved the Dempsey case. Texas & N. O. R. Co. v. Pool, Tex.Civ.App., 263 S.W.2d 582. When the question came before the same court for legitimate decision, it reversed its original dictum. Missouri-Kansas-Texas R. Co. of Texas v. McFerrin, Tex.Civ.App., 279 S.W.2d 410, 419. The Texas court of civil appeals sustained the trial court in refusing such an instruction and said:

"It assumes that the jury will not confine itself to the evidence nor the court's charge but will consider and take into account matters not mentioned therein. This is to assume that there will be misconduct on the part of the jury, an assumption in which we cannot indulge. * * * There was no necessity for the jury to be informed regarding the income tax law in order to properly answer the damage issues and we believe there was no error in refusing to give the requested charge."

The court of appeals of Ohio affirmed the trial court's refusal to give such an instruction upon the ground that it was instructing on a matter not pertinent to the issues and would complicate the trial by requiring an intricate discussion of tax and nontax liabilities. Maus v. New York,

Chicago & St. Louis Railroad Co., Ohio App., 128 N.E.2d 166. Indiana could find no reason to disapprove the Dempsey case but stated that the only prejudice which could result was an excessive verdict and, since the verdict was not excessive, the trial court would not be reversed for failing to give such an instruction. Highshew v. Kushto, Ind.App., 131 N.E.2d 652.

Reviewing the courts that have passed upon this question, we are of the view that Illinois, Texas and Ohio are correct in requiring that the case be tried•on the issues and presented to the jury with a correct measure of damages, of which the incident of income tax has no part. We would prefer to assume that the jurors to the best of their ability will follow the instructions given and will not depart from the issues and the law as announced.

█ Plaintiff alleged that as a result of the accident he was incapacitated to the extent he was unable to care for his business and his earnings were thereby reduced. As proof on this issue the court over objection permitted the plaintiff to testify that from January 1 to December 8, 1954, when the plaintiff sold the business, he sustained a loss of $3429.75. It developed that this information was gained from the accountant employed by the plaintiff who prepared from the books a profit and loss statement. The plaintiff did not keep the books and had no knowledge concerning bookkeeping. It is apparent, therefore, that the plaintiff was in effect testifying to the contents of the books of account and not from any knowledge of his own independent of what was reflected in the books. After this situation was developed, defendants moved to strike plaintiff's testimony. An adverse ruling from the trial court is assigned as error.

The best evidence of what the books reflect are the books and the entries therein. When the books exist, one having no independent knowledge of the facts related therein cannot establish such facts by oral testimony. 32 C.J.S., Evidence, § 792 d, p. 720. The court should have stricken this oral testimony and required the plaintiff to submit the primary evidence available to prove no profits if the fact existed or the testimony of a competent witness who has examined and is familiar with the contents of the books.

█ Defendant placed in evidence the profit and loss statement. Included therein under "Expenses" is an item of $546.40 for legal fees. Defendants offered to prove that this item was not a business expense, but was for litigation not connected with operation of the business. The court refused to allow the proof. This was error. If the item was beyond the sphere of plaintiff's business operation, it had no bearing on the question of his decreased earning capacity.

Judgment reversed with directions for new trial.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.